VanDeuzer *v.* Estate of Gordon.

EMILY A. VANDEUZER *v. The Estate of* SETH B. GORDON.

*Soldier's Will. Statute. Military Service.*

The exception of the statute, in respect to soldier's wills, provided in § 9, ch. 49, General Statutes, is *held* to apply to the case of soldiers in the performance of military service in the enemy's country, or in the soldier's own state or country in case of insurrection or invasion. The words "actual military service" should be understood in this restricted sense.

But it is not necessary in order to make a valid soldier's will that the soldier should be *in extremis.* When he is in the enemy's country, performing military-service, whether in camp, campaign or in battle, such service is *actual military service,* within the letter and spirit of the statute.

In September. 1862, G. enlisted and joined his company and regiment in camp at Worcester, Mass., was there mustered in, and soon after, while still there, wrote and signed an instrument, which was defectively executed as a will, but intending the same to be his last will and testament, provided he died during his term of enlistment. Before the expiration of said term he died without having been discharged or mustered out. *Held,* that the instrument was invalid as a will.

But while G. was in North Carolina with his regiment, the custodian of said instrument, who was named therein as one of the executors, wrote to G. making inquiries in respect to one of the bequests. G. wrote a letter in reply, in which he referred to said instrument, and pronounced it his *will,* and explained his meaning in respect to said bequest. *Held,* that the instrument and letter are to be taken, considered and treated as constituting one instrument; that the import of the letter is substantially the same as if G. had said I now adopt said instrument as my last will and testament; and that as the letter was written while G. was in actual military service, within the meaning of the statute, it gave testamentary operation to said instrument. BARRETT, J., dissenting.

THIS case was an appeal from an order and decree of the probate court for the district of Manchester, adjudging a certain instrument in writing presented to the said probate court for probate and allowance as the last will and testament of Seth B. Gordon, late of Winhall, in said district, deceased, to be informal and invalid, and that the same should not be approved and allowed as the last will and testament of the said Seth B. Gordon. The appellant is one of the legatees named in the instrument. After the entry of the appeal in the county court, the appellant filed her allegation in writing, thereby alleging that the said written instrument ought to be allowed, etc.

Trial by the court at the June Term, Bennington County, 1864, KELLOGG, J. presiding.

On trial, the said instrument in writing was produced in behalf of the appellant; and the probate and allowance of the same as the last will and testament of the said Seth B. Gordon was resisted and opposed by William Gordon, of said Winhall, his father and sole heir at law. The instrument is in the words and figures following, viz:

"Worcester, September 29th, 1862."

"I. S. B. Gordon, having enlisted as a soldier, and being mindful of the dangers that a soldier has to pass through, I would, should I die by disease, or be killed before my term of enlistment expires, that my property be disposed of as I at this time dictate. 1st, That my father receive 120 dollars out of it. The remainder be given to Emily A. Van Deuzer, if she be not married, or likely to be. If she be, or likely to be, that it be divided equally among my four sisters, Emily, Luthera, Clara, and Eliza Gordon. Knowing that there are no demands out against me, and having full confidence in those whom I wish to have take charge of my affairs, who are Seth and Emily Taylor; feeling assured that these directions will be legal, I now devote my whole attention to the service I am now in. In case of my decease, let no one disobey these directions, as it is the direction of S. B. Gordon."

"Witnessed by 〉　EDWIN H. HOLMES,
　　　　　　　　　　　　EMILY A. GORDON."

This instrument was made a few days after said Gordon had enlisted and was mustered into the United States military service in September, 1862, while in camp with his company and regiment, the 51st Massachusetts, at Worcester, Massachusetts, and was delivered to Seth Taylor, Jr., therein named, the uncle of said Gordon, and with whom he had lived after he was six years old, and in whose charge he left his effects. While in camp at Worcester, S. B. Gordon was away from camp on leave several times.

When his regiment on its return home to Worcester, near the expiration of its term of service, arrived in Boston, said S. B. Gordon was so unwell that he could not travel further and was left in

VanDeuzer *v.* Estate of Gordon.

Boston and there died of disease on the 12th of July, 1863. The regiment was mustered out the 27th of the same month, which was at about the expiration of nine months from the date of the muster-in of the last company.

After the said regiment left Massachusetts and went to North Carolina, it remained in the vicinity of Newbern, or in the military department of which the state of North Carolina formed a part, engaged in military service there, until some time in the fore part of July, 1863, when it left North Carolina to return to Worcester to be mustered out of service. While the said regiment was in North Carolina, the said Seth Taylor, Jr., wrote to Seth B. Gordon, to ascertain whether he, Gordon, intended by the said instrument to give to his father the sum of one hundred and twenty dollars in addition to the two notes which he held against his father, or the amount due on the notes only. To this letter Seth B. Gordon wrote a letter to Seth Taylor, Jr., in reply, and forwarded the same from Newbern, and in this letter he wrote that he thought that his will ( referring to the said instrument in writing,) would explain itself, but that if it did not, his meaning was that his father should have those two notes, and nothing more.

At the time of the making of the instrument in writing, Seth B. Gordon was of full age and sound mind, and his home, residence and domicil was always, previous to, as well as at the time of his death in the said town of Winhall. The said instrument was delivered to Seth Taylor, Jr., and was kept by him in his possession, until he presented the same to the probate court for probate and allowance, after the death of Gordon.

The county court, *pro forma*, decided that the said instrument ought not to be allowed and established as the last will and testament of Seth B. Gordon, and rendered judgment that the same is not his last will and testament. To this decision and judgment the appellant excepted.

Other and material facts are stated in the opinion of the court.

*Butler & Wheeler*, for the plaintiff.

I.  At the time Gordon, the testator, made the instrument, he was

a soldier in actual military service within the meaning of the 9th section of the statute of Wills.   G. S. 377, § 9.

He was in actual military service, within the common and ordinary meaning of those words, and they should be so construed unless they were adopted by the legislature in view of some other well known and firmly established construction.   *McCormick* v. *Rusch*, 3d. Am. Law Reg., 93.

This provision in our statute was taken from the English statute of frauds into which it was adopted from the civil law.   At the time our legislature adopted it, no construction had been established in either English or Roman jurisprudence different from what we claim .for it now.   No cases then had or could have arisen under the English statute, for the provision was confined to dispositions of personal estate, and by the English law no formalities were required for wills of personalty until the statute, 1 Victoria, 1838.   The rule of civil law was in accordance with the construction we claim.   By that rule a soldier was entitled to make his testament as he pleased when his name was on the rolls of the army, and when he was away from his own home and business and was engaged in military employment for the prosecution of war.   Dig. 29, Tit. I, ¶ 21 ; Just. Inst. Lib. II, Tit. 11, § 3 ; Saunders' Justinian, 254–5–6 ; Dig. 29, Tit. 1, 42.

II.   The plaintiff is entitled to have this instrument allowed as the last will of the testator on account of the effect of the letter written by him to Taylor from North Carolina.   At the time he wrote this letter he was in actual military service, within the meaning of the statute, beyond all question.   He was on a special expedition in the enemy's country.   He was situated with reference to making his will as if there had been no statute of Wills ; that is he could make his will in whatever manner he pleased.   The transaction was the same in effect as if he had written the will at the same time he wrote the letter and then sent both together to Taylor.   The will and letter, together with the facts found, clearly show that the will expresses his last testamentary wishes.   Had he been a citizen at the time he wrote the letter, and had it been signed by him and attested properly by three witnesses it would have operated as a codicil identifying and referring to the will, and would have made it

valid. But at that time he was so situated that he need not observe any formalities, and the letter was as operative without attestation as it would have been with it. By the rule of the civil law this transaction made the will valid. It indicated that the instrument expressed the wish of the soldier at the time when he wrote the letter, and by that law it was only necessary to ascertain the soldier's wish. The rule is thus stated after the reasons for it. Dig. 29, Tit. 1, ¶ 1.

He ratified and approved of the instrument by writing the letter, and thereby made it valid if it was not valid before. Ib. 9, § 1; Ib. 15, § 2; Dig. 29, Tit. 1, ¶ 20, § 1; Ib. 25.

*A. L. Miner*, for the defendant,
maintained that when Gordon died the time had expired when he intended or provided the instrument in question should operate as a will.

Courts have adopted a strict construction in regard to nuncupative wills of all classes. Redfield on Wills, 188, § 8. In case of a soldier, he must be *in extremis*. It is not contended that a soldier must be in his last sickness, to make a nuncupative will, but he must be in such actual military service that he has not a reasonable opportunity to make a will in conformity with the statute. Redfield on Wills, 185–6, §§ 5 and 6; 20 Johns. 510; Swimb. part 1, § 12; Modern Pro. Wills, 312–13–14–15.

Young Gordon was not in this situation while at Worcester. He could have made a proper will, as well as this.

A soldier, to be allowed the privilege of making an unwritten will, or a will not allowed by statute, must be in " *actual military service.*" This is defined to mean, that he must be on an expedition—in such a situation that he has no reasonable opportunity to make a will, within the provisions of the law. *Ex'r of Euston* v. *Seymour*, 2 Curtis, 339; *Drummond* v. *Parish*, 3 Curtis, 522; 3 Curtis, 818; 4 Bradford Sur. Rep. 154–6; Redfield on Wills, 194, note; Modern Pro. of Wills, 520.

It is said that the letter written by Seth Taylor to Gordon, and his answer, affirms this will. There are several reasons why it does not.

The case don't find, while Gordon was at Newbern, he was ever in any expedition. This privilege is not granted to soldiers unless in actual *expedition*—marching, going into battle, expecting an attack or something of that kind. It is no privilege to allow soldiers' property to be sworn away by parol.

If he had been, while at Newbern, on an *expedition*, or in such " actual military service " that he could not have made a will, according to the statute, he must then either make a will, or declare one already made to be his *last will and testament*. Redf. on Wills, 178, and cases cited ; 3 Met., Kentucky, 101.

The opinion of the court was delivered by

WILSON, J. The general question in this case is whether. the instrument in question, purporting to be the last will and testament of Seth B. Gordon, is valid as a soldier's will. It appears that on the 2d day of September, 1862, he enlisted at Worcester as a private in a company afterwards known and called company A, in the 51st regiment of Massachusetts volunteers, a regiment raised as a part of the quota of that commonwealth, under the order issued by the war department by order of the President of the United States, to serve for nine months, unless sooner discharged. The case shows that Gordon joined his company and regiment in camp at Worcester, and while in camp there he was, on the 25th day of September, 1862, mustered into the military service of the United States. After he was mustered into the service, on the 29th day of September, 1862, while he was with his company and regiment in camp at Worcester, he wrote and signed the instrument in question, intending the same as his last will and testament. Gordon died of disease on the 12th day of July, 1863, without having been discharged from, or mustered out of service ; and it is claimed that his death did not occur until after his term of enlistment had expired. The clause of the instrument upon which this point is raised is in these words : " *1 would that if 1 should die by disease, or be killed before my term of enlistment expires, that my property be disposed of as I, at this time, dictate.*" The fundamental rules of construction require that the sense in which

Gordon used the words, " *my term of enlistment*," should govern so far as it can be gathered from the instrument itself, in the light of surrounding circumstances.

He enlisted with the intention of joining a particular company and regiment, neither of which was fully organized at the time he executed his enlistment contract. His company was full at the time he made the instrument in question, but at that time the regiment to which his company was attached was not full, nor was it fully made up and mustered into service until the 25th of November, 1862. It is not claimed that Gordon understood at the time of making the alleged will that his term of service would expire before the expiration of the term of service of other members of his company, nor is there anything in the case which shows that he understood at the time of making the instrument, that his company would be entitled to a discharge until the whole regiment should be discharged. We must, therefore, understand that Gordon enlisted with full knowledge of the effect of his enlistment . contract, that under it, he would be required to serve for the period of nine months from and after the day on which his regiment should be accepted and mustered into the United States service, and in this sense, we think, he used and understood the words in the instrument, " *my term of enlistment*." The term of service of his regiment expired on the 25th of August, 1863, consequently the contingency upon which he desired the instrument should take effect, happened before his term of enlistment expired. Section 9 of chapter 49 of the General Statutes, provides that " nothing in this chapter shall be construed to prevent any soldier, in actual military service, or any mariner or seaman being at sea, from disposing of his wages, or other personal estate as he mght otherwise have done." By this section the formalities in the execution of a will, required by the general provisions of the statute, are dispensed with. Under the provisions of the section referred to, in order to constitute the instrument a valid soldier's will, Gordon must have been in actual military service at the time of its execution. The term *service*, in its general sense, embraces all the details of the military art. In this sense of the term Gordon was in military service at the time he wrote and signed the instrument. He

was subject to all the laws and regulations for the government of a soldier who had enlisted for the purpose of joining a certain company and regiment. He was in camp under instruction in military drill and discipline, and performing such other service as might be required of a soldier before his company and regiment were accepted and mustered into the principal service for which they were to be organized. The term service in its restricted sense is the exercise of military functions in the enemy's country in the time of war, or the exercise of military functions in the soldier's own state or country in case of insurrection or invasion, and in this sense the words of the statute, "*actual military service,*" should be understood. At the time Gordon executed the instrument the commonwealth of Massachusetts was not invaded, there was no warfare in that state ; he did not enlist in view of performing actual military service in that state, in the sense contemplated in the exception of the statute, and at that time he had not, nor had his company or regiment, been ordered to the enemy's country. The exception of the statute, in respect to soldier's wills, is founded upon the necessity of the case. It is limited to cases where from the actual or supposed situation of the soldier he is exposed to the perils incident to actual warfare. It is clear that such was not the situation of Gordon at the time he made the instrument, and that he was not in condition while at Worcester to make the soldier's will.

It is insisted by the appellant that the letter written by Gordon while at Newbern, in military service, contains a recognition by him of the instrument as his last will and testament. It appears that the regiment to which Gordon belonged was mustered into service on the 25th of November, 1862, and on that day Gordon, with his regiment left Worcester and went under orders to Newbern in the state of North Carolina, and that he remained in the vicinity of Newbern, or in the military department of which North Carolina formed a part, that he engaged and continued in military service there, until the fore part of July, 1863, when the regiment left that state to return to Worcester to be mustered out of service.

While Gordon was in the state of North Carolina, as a soldier, he wrote the letter in question ; and we are entirely agreed that he was

at that time in actual military service within the meaning of the statute. He was then in the enemy's country engaged in actual warfare. He was liable at any hour to engage in battle, and while serving in that department, whether in camp, or campaign service, he was in *actual* military service, as fully as if he had been engaged in actual combat with the enemy.

It is not necessary in order to make a valid soldier's will that the soldier should be *in extremis*. The statute was enacted for the benefit of the able-bodied soldier, as well as for the soldier who is dying of disease or wounds. Under a different rule of interpretation the soldier who is about to engage in battle, might be wholly deprived of the provisions of the statute. Nor is it essential to the validity of a soldier's will that it should be made or executed in the face of the enemy, or while the army is preparing for an immediate engagement, for, at such time, from the very nature of the circumstances, the engagement must be delayed to give opportunity for the soldier's to make their wills, if they desire to make them, or they must be deprived of the provisions of the statute. When a soldier is in the enemy's country, performing military service, whether in camp, in campaign or in battle, such service is *actual military service*, within the letter and spirit of the statute. This was the very condition or situation of Gordon at the time he wrote the letter to Taylor. He was a soldier in the enemy's country, and liable to all the perils incident to actual warfare. The only remaining inquiry relates to the import of the letter written by Gordon to Taylor, and its connection with and effect on the instrument alleged to be his last will and testament. It should be observed that Seth Taylor is named in the instrument executed by Gordon at Worcester as one of his executors. The instrument directed Taylor to carry out the wishes of Gordon as therein expressed, and it was delivered to Taylor while Gordon was in camp at Worcester. It appears that while the regiment was in North Carolina, Taylor then having the custody and care of the instrument, and entertaining some doubt as to its con--struction in respect to the rights of one of the legatees, wrote to Gordon to ascertain whether he intended by the instrument to give his father the sum of one hundred and twenty dollars in addition to

the notes he held against him, or the amount due on the notes only. The case shows that Gordon received the letter, and it referred to the instrument written by him at Worcester, as his last will and testament. Gordon well understood the instrument contained a clause in these words : " *In case of my decease let no one disobey these directions, as it is the direction of S. B. Gordon.*" Gordon having in the most emphatic language enjoined upon Taylor a strict observance and fulfilment of the directions contained in the instrument, and knowing that Taylor desired faithfully to execute the trust, could not have entertained a doubt as to the subject or purpose of Taylor's inquiry, nor as to his right to make it. He had, at that time, full knowledge of the contents of the instrument executed by him at Worcester ; and it was under these circumstances that he wrote and stated in his letter to Taylor that he thought his *will*, (referring to the instrument in question,) would explain itself, but that if it did not his meaning was that his father should have the two notes and nothing more. Gordon in the letter spoke generally of the instrument written by him at Worcester ; he referred to it as a whole, and pronounced it his will. The letter contains express recognition and adoption of the whole instrument as his last will and testament, and the force of his language is not in the least weakened by the fact that in another part of the letter he alluded more particularly to the point of Taylor's inquiry, but this circumstance gives to the letter additional force. The instrument written and signed by Gordon while at Worcester, and his letter written at Newbern, while he was in actual service, relate to the same subject, they are to be taken, considered and treated as constituting one instrument ; the latter referring to and giving testamentary operation to the former. It is clear that the letter expresses a testamentary intention as to the amount given to the testator's father, and to this extent it operates as a codicil and is conclusive as to his rights as one of the legatees. If Gordon intended by his letter to give a testamentary operation to the instrument as to his father, to the extent of $120.00, and no more, to whom did he intend to give the remainder of his property ? Most certainly to the other legatee or legatees named in the instrument. It was said on the argument of the case that the letter merely referred to

VanDeuzer *v.* Estate of Gordon.

the instrument written at Worcester as an indifferent act done there, without indicating any present purpose or intention in relation thereto : " *But clearly he must be understood to have made a will, who has in some way declared that he desires a will he had previously made to be operative.*" Dig. 29, Tit. 1, § 25, last clause.*

The letter should be so construed that we shall arrive at the intention of Gordon, at the time he wrote it, in respect to the instrument to which it referred ; and a majority of the court are of the opinion that the import of the letter is substantially the same as if Gordon had said : *I now adopt the instrument written and executed by me at Worcester as my last will and testament.* Taylor's letter to Gordon, Gordon's situation at the time he replied to Taylor, his anxiety that his directions should be observed, and in short all the circumstances of the case seem to require the construction and conclusion above expressed. To hold that Gordon, by his letter, did not intend to recognize and adopt the instrument as his last will and testament would charge him with insincerity and gross folly in respect to matters of grave import, or with a settled purpose to lay the foundation for controversy and litigation in the settlement of his estate ; but there is nothing in the case which would warrant any such charge or inference. No question is made but that Gordon was, at the time he executed the instrument and at the time he wrote the letter, capable of making a will ; and it would seem he well understood who was the most deserving of his bounty.

The result is that the *pro forma* judgment of the county court is reversed, and judgment is rendered that said instrument in writing is the last will and testament of the said Seth B. Gordon, and the same will be certified to the probate court.

. Barrett, J., dissenting.

---

*Titius, priusquam tribunus legionis factus esset testamentum fecit, et postea cinctus manente eodem defunctus est ; quæro, an militis testamentum videatur esse ; Marcellus respondit: testamentum, quod ante tribunatum fecissit, nihil si postea ab eo factum, dictum esse probaretur, quod valere vellet, ad commune ius pertinet ; Constitutionibus enim Principum, non militum testamenta, sed quæ a militibus facta sunt, confirmatur. Sed plane fecisse testamentum, eum interpretandum est, qui, se velle testamentum, quod ante fecerat, valere, aliquo modo declaravit.