In the Matter of Proving the Last Will and Testament of ERNEST CHARLTON MASON, Deceased, as a Nuncupative Will of Personal Property.

Surrogate's Court, Kings County, June, 1923.

**Wills — nuncupative will of soldier — sufficient proof of death — evidence establishing will.**

Upon the capture of a soldier of the United States army during the attack on the Hindenburg line, he was taken with other prisoners to the German rear and a few days thereafter was stricken with influenza and was attended by L., one of his regimental comrades, and becoming so ill as to be unable to rise and also being delirious he was removed in a German ambulance, has never been heard from since and the United States army authorities have classified him as ·dead. *Held*, that proof of such facts in a probate proceeding was sufficient to establish the fact of the death of said soldier.

On the night before the attack on the Hindenburg line the soldier, who was on duty as a signal man at the telephone in a dugout, between messages said to comrade W., who at times relieved him at the telephone, " In the event that I get killed, I want everything that I have to go to Miss Knapp, including my insurance." After his capture and several days before he was taken away in the ambulance, upon being asked by comrade L. what he wanted to do, replied, " Ted, I haven't much in this world, but what I do have, I want to go to Miss Knapp." On neither occasion was any one present within hearing except the two soldiers. *Held*, that such testamentary declarations were entitled to be admitted to probate as the nuncupative will of said soldier, valid in law to pass his personal property.

PROBATE proceeding.

*MacLean, Krouse & MacLean (James N. MacLean* and *Chester T. Krouse,* of counsel), for proponent.

*Montague Lessler,* for contestant.

Misc. 142]         Surrogate's Court, Kings County, June, 1923.

WINGATE, S.    This is a proceeding to probate the oral will of a soldier, last seen or heard of in a German prison camp.

The first question to be determined is whether or not the soldier is dead.    The contestant admits that the inherent probabilities are that the soldier is dead, but questions whether there is proof enough before the court to establish the fact.

The soldier involved was a member of the One Hundred and Sixth Infantry of the army of the United States, and was captured on September 27, 1918, by troops of the German army, during the attack of the Twenty-seventh American Division upon the enemy position known as the Hindenburg line.    He was taken by his captors, with other prisoners, to the German rear.    On October first he was stricken with influenza.

Quartered at that time in a schoolhouse or barn, he was there attended by Loomis, one of his regimental comrades, who was his fellow prisoner, and his only medication was some aspirin given him by a British hospital orderly, also a fellow prisoner.    He was so sick as to be unable to rise, and on October fourteenth and fifteenth was delirious.    On the latter date he was, during the absence of his comrade, removed from the schoolhouse or barn in a German ambulance.

Since then, he has never been heard from.    All the Americans captured by the German army have been repatriated, but he is not among them.    The United States army authorities have classified him as dead.    His comrades have never heard from him. The members of his family have never heard from him.    The young lady to whom he told his comrades he was engaged, and who was the object of his affectionate solicitude, designated by him as the beneficiary of his alleged will, has never heard from him.    His uncle, who holds his funds, has never heard from him.    No reason is known to exist why he should not, if alive, communicate with some or all of them.

The well-known character of the malady from which he was suffering, so fatal even under the best of care and medical attention, taken in conjunction with the other facts disclosed in the record, lead to the inevitable conclusion that, under the conditions confronting him during his illness, aggravated by the lack of proper medicines, he died.

It is true that his grave has not been located, but the graves of prisoners dying in prison camps of a defeated and retreating army are not always accurately recorded, and many graves have been found of dead whom it is impossible to identify.

The law only requires that the proof should remove the reasonable probability of Ernest Charlton Mason's being alive.    *Butler* v. *Mutual Life Ins. Co.,* 225 N. Y. 197, 203, 204.    There is no

Surrogate's Court, Kings County, June, 1923.          [Vol. 121

probability at all that he is alive.    Indeed, the proof does not admit of conflicting inferences, but points clearly to his death; and it is found, as matter of law and of fact, that the evidence is sufficient to show that he is dead and does establish the fact of his death.

The second question to be determined is as to whether decedent made a valid will.

The decedent, Mason, on the night before the attack of September 27, 1918, was on duty as a signalman at the telephone in a dugout, with other members of his company, awaiting the hour of attack. He was on duty forty-eight hours, and in the intervals between messages talked to his comrade, Westgate, who at times relieved him at the telephone.    Westgate testified that during the night Mason said: " In the event that I get killed, I want everything that I have to go to Miss Knapp, including my insurance."    When he made the statement, no one was present within hearing but Mason and Westgate.    They talked about the matter considerably and Mason referred to it more than once.

After Mason was captured, as recited above, and about two days before he was taken away in the German ambulance, about October thirteenth, according to the testimony of Loomis, the latter expressed to Mason some wishes in regard to messages to his folks and asked Mason what he wanted him to do.    Mason replied, " Ted, I haven't much in this world, but what I do have I want to go to Miss Knapp." When he made this statement no one was present within hearing but Mason and Loomis.

The statutory provisions as to nuncupative or unwritten wills is found in section 16 of the Decedent Estate Law, which provides that they shall not be valid " unless made by a soldier while in actual military service, or by a mariner, while at sea; " and in section 141 of the Surrogate Court Act, which requires that " before a nuncupative will is admitted to probate, its execution and the tenor thereof must be proved by at least two witnesses."

Except for these limitations, the common-law rules as to nun cupative wills are still in force.    *Matter of O'Connor,* 65 Misc. Rep. 403.    Under the statutes, as stated in that case, " in addition to the general rules regarding testamentary capacity and freedom from restraint, the only essentials are that the act shall be performed with testamentary intent and shall be sufficiently explicit and intelligible to permit a finding of its purport and scope, and that its execution must be proved by at least two witnesses."

It has been urged in this case that apprehension of death must also be shown.    It is not the law that, to be valid, the oral will of a soldier must be made in immediate apprehension of death, arising from circumstances equivalent to his being *in extremis.*    See *Matter*

of *O'Connor, supra; Botsford* v. *Krake,* 1 Abb. (N. S.) 112; *Leathers* v. *Greenacre,* 53 Maine, 561, 574; *Van Deuzer* v. *Estate of Gordon,* 39 Vt. 111; Schouler Wills (5th ed.), § 367; Gardner Wills (2d ed.), 54; 1 Alex. Wills, § 174 *et seq.* It cannot, however, seriously be contended that this young soldier, either upon the occasion of his first declaration, when in the dugout awaiting the order to assault the enemy's strongly intrenched position, which up to that time had successfully resisted many attacks, or upon the occasion when he lay prostrate upon the floor of his prison suffering from a dread sickness, was not in apprehension of death. He undoubtedly was subject to that apprehension upon both occasions. See cases cited, *supra.*

The deceased was a soldier and was in actual military service. His testamentary intent was very clearly expressed upon the first occasion mentioned, and was quite apparent upon the second. The words used were sufficiently explicit and intelligible to permit a finding of the scope and purpose of his testamentary desires. " Everything to Miss Knapp " is unequivocal and precise as to *quantum* and beneficiary.

We come to the question as to whether a statement of testamentary purpose made in substantially identical terms upon two occasions, each time to a single witness, is a sufficient compliance with the statute.

The execution of a written will is required by statute (Decedent Estate Law, § 21) to be observed with certain prescribed formalities, but even these formal requirements permit the testator to acknowledge his signature and declare the instrument to the witnesses upon separate occasions. 1 Heaton . Surr. (4th ed.) 212. There seems to be no stronger restriction in regard to the execution of a soldier's nuncupative will.

The latitude permitted in regard to nuncupative wills of soldiers and the origin and history of so called " soldiers' wills " is interestingly discussed in the opinion of Surrogate Bradford in *Ex parte Thompson,* 4 Bradf. 154, which closes with the statement (p. 160): " Nor has any particular mode been prescribed in respect to the manner of making the testament. The very essence of the privilege consists in the absence of all ceremonies as legal requisites; or, as Merlin states the proposition — ' Their form was properly to have no form.' It is true, the Roman law required two witnesses; this, however, did not relate to the essence of the act, but only to the proof. In respect to evidence, we do not follow the civil or the canon law; no particular number of witnesses is required to verify an act judicially, and all the court demands, is to be satisfied by sufficient evidence, as to the substance of the last testa-

mentary request or declaration of the deceased.  This ascertained, the law holds it sacred, and carries it into effect, with as much favor and regard as would be paid to the most formal instrument, executed with every legal solemnity."

An instructive discussion is also to be found in *Van Deuzer* v. *Estate of Gordon, supra.*

The very preservation of the right to soldiers to make nuncupative wills while in service indicates the appreciation by the legislature of the peculiar circumstance of their existence and the uncertainty of its tenure and the desire to relax in their favor the restrictions placed upon others in regard to the effectuation of their testamentary purposes.

There is no express requirement of statute that there must be a declaration of testamentary purpose by a soldier in actual service to two persons present at the same time, in order that the declaration may be proved as a nuncupative will.  There was no such requirement at common law.  Though not express, does the statute plainly imply such a requirement?

" Statutes in derogation of the common law are to be construed strictly.    Where the statute not only affects a change in the common law, but is also in derogation of common rights, it must be construed with especial strictness.  *  *  *  The rule to be applied in the construction of all such statutes is that they must not be deemed to extinguish or restrain private rights, unless it appears by express words or plain implication that it was the intention of the legislature to do so."  36 Cyc. 1179.

In the light of this rule of construction, the surrogate is of the view that section 141 of the Surrogate Court Act does not require the execution of a soldier's oral will to be proved by the testimony of two witnesses who were present together at the time of the testamentary declaration, but that two single declarations, of like tenor, each to a separate witness, upon a separate occasion, will suffice, there being no evidence of testamentary declarations by the decedent at variance with those propounded as his will.

A like ruling has recently been made by Surrogate Foley of New York county in *Matter of Hickey*, 113 Misc. Rep. 261, in which case he admitted as the oral will of a soldier portions of two letters, relating to the disposition of his estate.   One of the letters had been addressed to the beneficiary of the will, and the second to another person.

Cases, from other jurisdictions, as to noncupative wills of non-soldiers and non-sailors, are not controlling upon the question under discussion; for, except as to the privileged classes (soldiers and seamen), oral wills are not favored, and the courts require strict compliance with statutory formalities before decreeing probate.

1 Alex. Wills, § 185. A far more liberal rule obtains with respect to the oral wills of soldiers. Id. § 172.

A recent example of the generosity of the law in their behalf is to be found in the case of *Rice* v. *Freeland,* 109 S. E. Repr. 186, in which the Supreme Court of Appeals of Virginia says: " We are frankly, and we believe properly, relaxing in some measure the ordinary rules of construction in this case, and we are doing so in recognition of the general tendency of the Legislatures and the courts to treat soldiers in actual service as belonging to a class of persons entitled to public gratitude and to special consideration in respect to their private and property interests."

The execution of the will is deemed sufficient. The statements of the witnesses and their earnest demeanor on the stand gave every indication of truthfulness. The reticence of one witness in regard to expressing to decedent's *fiancéé* the facts indicating his death is easily understandable.

The testamentary declarations of the decedent referred to in this opinion are admitted to probate as his last will and testament, valid in law to pass his personal property.

Settle decision and decree on notice.

Decreed accordingly.