In the Matter of the Estate of ERNEST C. MASON, Deceased.

Surrogate's Court, Kings County, May 15, 1940.

*William N. MacLean* [*Chester T. Krouse* of counsel], attorney *pro se*, petitioner, for the motion.

*Lind & Marks*, for the executrix, respondent, opposed.

WINGATE, S.   The present proceeding is a sequel to one decided almost a generation ago (*Matter of Mason*, 121 Misc. 142), in which this court admitted to probate the nuncupative will of an American

soldier who had been taken prisoner by the Germans in an attack on the Hindenburg line on September 27, 1918, and who was last seen by any person appearing before the court on his removal in a German ambulance while delirious and suffering from a severe attack of influenza.

His *fiancée* retained the present petitioners as her attorneys to seek the probate of an alleged nuncupative will predicated on two statements made by the deceased to fellow soldiers shortly before the attack. Obviously, as they had not married, she possessed no devolutionary rights in his estate unless this alleged will was admitted to probate.

The agreement of retainer which she then signed authorized the present petitioners to represent her " in any action or proceeding I may institute or bring to probate the last Will and Testament of Ernest C. Mason, deceased, formerly Private, Co. A, 106th Infantry, and in any other action or proceeding necessary to recover any share or interest I may have in said Ernest C. Mason's estate, and also any action or proceeding to recover my share or interest in the United States Government life insurance taken out by said Ernest C. Mason, deceased."

The document further provided that the client agreed to pay her attorneys thirty-three and one-third per cent " of any and all recovery which may be obtained, either as the result of any action or proceeding, or through compromise or settlement."

The proceeding for probate was instituted. This court held that the established facts were such as to raise an inference of the death of the soldier and admitted the will. It may be observed parenthetically that advices from the United States Army Graves Registration Bureau subsequently reached the court as an individual that the body of the soldier had been found and identified. No appeal was prosecuted from the decision, with the result that by reason of the services of the present petitioners the *fiancée* of the deceased soldier was established to be his sole distributee, and received letters testamentary in respect of his estate.

The estate of the deceased, at that time, amounted to approximately $1,600 and the petitioners then received compensation pursuant to the terms of their retainer of approximately one-third of this sum, or about $500.

The deceased was, however, insured under a $10,000 war risk policy which, by its terms, was payable to his estate. Under the law as it then existed, such a disposition was not permissible and installment payments were made to two uncles of the deceased who were the proper beneficiaries under the law, until their respective deaths. At that time $7,677 remained unsatisfied, and in March,

1939, this was paid to the former *fianceé*, by reason of her relationship as sole testamentary beneficiary. The attorneys have now instituted the present proceeding to obtain a further payment equivalent to one-third of this sum, as a part of the reasonable and agreed compensation for their services pursuant to the terms of the retainer.

The respondent has interposed an answer consisting of denials and of seven affirmative defenses and the petitioners have now moved to strike out all of the latter pursuant to rule 109 of the Rules of Civil Practice. Despite the broad scope of the motion, the arguments and memoranda of the parties have been addressed solely to the "Ninth" and "Tenth" paragraphs of the answer, which assert in substance that the petitioner-attorneys performed no services whatsoever in connection with the collection of the insurance (which is admitted) and that the retainer agreement, in so far as it purported to predicate any remuneration upon the sums receivable by reason of the war risk insurance, is "contrary to Federal Statute and * * * therefore void and contrary to public policy."

Since this is the sole question which has been argued and briefed and basically underlies the entire asserted right of the attorneys, it, alone, will be considered at this time.

The Federal statute upon which the principal reliance of the respondent is predicated is contained in section 551 of title 38 of the United States Code. This enacts in substance that except where a suit on an insurance claim is brought, as contemplated in section 445, "payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the Veterans' Administration shall not exceed ten dollars in any one case." Violation of this limitation is declared to be a misdemeanor.

In *Margolin* v. *United States* (269 U. S. 93, 101) it was held that this statutory limitation on compensation was operative despite the fact that the attorney, in addition to overseeing the "preparation and execution of necessary papers" in the application to collect insurance, conducted an extended correspondence with the Veterans' Bureau in respect thereof and made a trip from New York to Washington in its promotion, and in *Hines* v. *Lowrey* (305 U. S. 85, 90) it was applied to compensation to counsel for the committee of an incompetent veteran whose allowance in excess of the prescribed sum was awarded by a State court.

These decisions are merely outstanding examples of the invariably applied rule that where the service, compensation for which is sought, is the collection of government compensation or insurance,

remuneration in excess of that specified in the statute is not permissible. They have no application to the present case. Here the attorneys are not seeking compensation for services rendered in the collection of insurance. They did not collect it and make no claim for having done so. That their retainer was primarily, if not, indeed, exclusively, for the purpose of obtaining an adjudication of the status of their client as the person solely entitled to testamentary distribution of the assets of the deceased soldier, is obvious from the fact that under the Federal statute, as it then stood, the insurance was permissible of payment only to the blood relatives or immediate family of the insured. In September, 1920, at the time the retainer was signed, there was no reason to believe that any other person could ever participate therein. It was not until almost five years later that the law was amended to permit of this result. Indeed, this alteration in the law occurred almost two years subsequent to the time when the attorneys had achieved the primary purpose for which they were retained, of establishing the status of their client as the sole testamentary distributee of the deceased.

Their service was performed and they had entitled themselves to remuneration therefor. Since both of the parties were competent adults it was open to them to fix this remuneration in advance, and, in the absence of any inequitable dealings in the inception of the contract, a court of general jurisdiction would presumably enforce it according to its terms (*Ward* v. *Orsini*, 243 N. Y. 123, 127; *Rodkinson* v. *Haecker*, 248 id. 480, 489; *Matter of Pagnotta*, 161 Misc. 415, 418, 419; *Matter of Dugan*, 147 id. 776, 780; *Matter of Merrill*, 165 id. 295, 296), since, as a general principle, the courts will not concern themselves with the terms of a contract if fairly attained. If a competent party, uninfluenced by improper considerations, binds himself by an improvident agreement, that is something for which he may blame himself alone and for relief from which he may not importune the courts.

The court is not to be deemed to intimate that the present agreement was of such a nature. On the contrary, the *fiancée* of the soldier was a complete legal stranger to him. To achieve a more favorable status it was necessary for her attorneys to perform a procedural operation involving considerable legal and factual difficulties. Under such circumstances an agreement for a contingent payment of one-third of all benefits which might accrue to her by reason of success in obtaining a declaratory judgment altering her status was *prima facie* reasonable. This is, however, beside the point. So long as the contract was fairly made the criterion of compensation is wholly immaterial and might have

been fixed at a number of dollars to be represented by the figures of the license of the first automobile to pass a given point on a certain future day. The actual measure adopted, in so far as it involved the then unanticipatable receipts from the insurance, possessed little, if any, more direct relation to the actual performance of the attorneys.

Of course, as is recognized by the petitioners, the contract of retainer is unenforcible in this court (*Matter of Gilman*, 251 N. Y. 265, 271; *Matter of Meng*, 227 id. 264, 269; *Matter of Hoffman*, 136 App. Div. 516, 519; *Matter of Woolfson*, 158 Misc. 928, 930; *Matter of Dugan*, 147 id. 776, 780; *Matter of Geller*, 167 id. 578, 579, 580; *Matter of Link*, 173 id. 217, 221), since the only authority accorded to the surrogate in this regard is for an award of reasonable compensation for the services demonstrated to have been rendered. This is all which the petitioners here pray. To this they are entitled.

The agreement in the present case did not purport to assign to the attorneys any part of the war risk recovery or any other sum. It read, " I agree to pay," which language definitely excluded any immediate and irrevocable appropriation and vesting of interest in any fund to be received. (*Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179, 183; *Fairbanks* v. *Sargent*, 117 id. 320, 330; *Donovan* v. *Middlebrook*, 95 App. Div. 365, 367; *Farmers' Loan & Trust Co.* v. *Winthrop*, 207 id. 356, 362; *Matter of Leverich*, 135 Misc. 774, 783; affd., on opinion of this court, 234 App. Div. 625; *Matter of Link*, 173 Misc. 217, 220.) There is consequently no violation of the inhibition against assignment of war risk insurance contained in section 454 of title 38 of the United States Code.

In conclusion, and for the future guidance of the parties, the court must express its disapproval of the conclusion attained in *Matter of Maybury* (174 Misc. 246.), upon which the petitioner apparently places some reliance. This court has already, in *Matter of McCormick* (169 Misc. 672), expressed diverse views on this subject.

It follows that the motion to strike out the " Fourth Defense " contained in the " Ninth " paragraph of the answer, this being the only portion of the motion which has been argued or briefed, will be granted.

Enter order on notice in conformity herewith.