In the Matter of the Estate of CHARLES SCHANZER, Deceased. IDA SCHANZER, Appellant; ALFRED E. HERZ, Respondent.

First Department, February 17, 1959.

*Herman Wollitzer* of counsel (*Julius Gilman* with him on the brief; *Herman Wollitzer,* attorney), for appellant.

*Homer I. Harris* for respondent.

M. M. FRANK, J. The petitioner appeals from an order of the Surrogate's Court which denied her application, pursuant to the Surrogate's Court Act (§ 231-a), for an order fixing counsel fees payable to the respondent at $4,500, and directing the respondent to refund the amount of $13,000 paid by the petitioner in excess thereof, and which granted the respondent's cross claim for $4,032.60. There is no dispute that the respondent had received a total of $17,500 prior to the time this proceeding was started.

The petitioner, who is over 70, is the executrix and sole beneficiary of the estate of her late husband. When the decedent committed suicide in March, 1956, the respondent, who had represented him, was immediately retained as counsel. At the time, the subject of fees was not discussed.

On June 7, 1956, the petitioner signed a retainer agreement, reading, in part, as follows: " I, Ida Schanzer, as Executrix of the Estate of Charles Schanzer, individually and as sole beneficiary of the probated will herein, do hereby agree that in addition to all of his disbursements, expenses and costs that the legal fees * * * are hereby computed, set, fixed and determined at fifteen per cent (15%) of the *gross estate* payable on demand. Dated: June 1, 1956." It is evident, therefore, that the respondent undertook to represent the petitioner on a *quantum meruit* basis from the inception of his activities in March, until June.

The transfer tax proceedings fix the gross estate at $143,-550.66. Hence, counsel fees computed at 15% thereof would be $21,532.60. Included in the gross estate was a life insurance policy in the sum of $6,000, payable directly to the executrix; $31,000 on deposit in banks; $81,350 in securities, listed on the stock exchange; several small items of no particular significance; and approximately $30,000 in accounts receivable. Obviously, except for the collection of the receivables, no complicated problem was involved in the transfer of the assets to the executrix, or in the administration of the estate.

It is urged that a serious dispute was raised by one John McCafferty, who claimed ownership of the grocery business operated by the decedent, purported to be worth $60,000. The respondent suggests that it was through his efforts that the claim was ultimately settled for $5,000. The record contains very little more with respect to the merits of this claim, or the value of the business. The gross estate schedules do not reflect any assets of the grocery business other than the accounts receivable.

The respondent urges that, in the absence of proof that a written retainer agreement was fraudulently or otherwise wrongfully procured, the courts may not interfere with the arrangement when made by an adult, competent client, who, as in this case, is the sole beneficiary of the assets of an estate. That proposition is correct as a general statement. (See *Matter of Fitzsimons,* 174 N. Y. 15, 23; *Matter of Peters,* 271 App. Div. 518, 523; *Ward* v. *Orsini,* 243 N. Y. 123, 127; *Matter of Sasson,* 231 App. Div. 524, 526; *Matter of Woolfson,* 158 Misc. 928, 931; *Matter of Mason,* 174 Misc. 218, 222.)

However, the petitioner argues that the rule is inapplicable here. In support of her application, she claims that the retainer agreement is unconscionable on its face; that there was over-reaching; that she signed it without full knowledge of its effect and consequences; and that the agreement was abandoned because neither party complied with its terms.

The testimony indicates that the petitioner is somewhat illiterate. For example, although she signed a release, it is apparent that she did not understand its significance. She asserts that she was not fully aware that she had signed a retainer or that it contained a provision for the payment of 15%. She testified that she was never informed as to the sum she would be required to pay, having only been told, "We are friendly. I am going to treat you right." The respondent never denied this testimony. Moreover, he testified to but one conversation, limited to his request that she read the retainer

carefully and sign it, with which she complied. Simultaneously with the execution of the retainer, she signed a check for $5,000 on account of fees, and a number of other papers and checks.

Since the respondent relies upon the retainer to sustain his recovery thereunder, it should appear from the record that he complied with it throughout. In that connection, it is significant that when two relatives of the petitioner discussed the question of fees with the respondent after the dispute arose, he did not mention the existence of the retainer. It is equally significant that in discussions with new counsel retained by the petitioner, the respondent did not disclose that he held a signed retainer and asserted no claim for fees predicated thereon. As appears from the schedules in the transfer tax proceedings, the collected receivables amounted to $28,750.60. For this service, the respondent deducted $7,500, which was not in accordance with his retainer of 15%, but was in excess of 26%. As evidence of the value of his services, the respondent directs attention to affidavits indicating that the executrix took a credit of $25,000 for legal fees. They were prepared by the respondent at the time that he had a retainer calling for 15%. In providing for that credit, it is apparent that he ignored the contract.

The conclusion is inescapable that after its execution, the parties disregarded the explicit terms of the retainer, and until this litigation commenced, the respondent evaluated his services on a different basis. A contract duly executed and thereafter abandoned or ignored by the contracting parties is unenforcible. Moreover, an abandonment may be inferred from the conduct of the parties and the attendant circumstances (*Green* v. *Doniger,* 300 N. Y. 238, 245; *Rodgers* v. *Rodgers,* 235 N. Y. 408, 410; *Schwartzreich* v. *Bauman-Basch, Inc.,* 231 N. Y. 196, 205; 6 Williston on Contracts [rev. ed.], § 1826, p. 5171).

Retainer contracts between attorney and client, as a matter of public policy, are of special interest and concern to the courts. They are not always enforcible in the same manner as ordinary commercial contracts. This is especially true when an agreement is consummated after the relationship has been established, and trust and confidence have been reposed in the attorney by the client. In this case, the confidential relationship of attorney and client came into being several months before the retainer was signed. Under the circumstances, our courts, as well as those in other jurisdictions, have repeatedly held that the burden of proving that the arrangement for compensation was fair and reasonable and fully comprehended by the client rests with the attorney. (*Matter of Vaupel,* 266 App. Div. 723;

*Frost* v. *Bachman,* 259 App. Div. 745, 746; 5 Am. Jur., Attorney at Law, § 160; Ann. 19 A. L. R. 847, 855.)

In *Matter of Howell* (215 N. Y. 466), in which a retainer signed by an elderly woman was in question, the court said (p. 472): " Here we have the alleged contract made * * * at a time when the relation of attorney and client had existed for a long period of time and was still in force. In determining the validity and conclusiveness of such contracts, in view of the confidential relation between the parties, the same will be carefully scrutinized by the courts. * * * In this state it has been held that as to contracts made between the attorney and his client, subsequent to the employment which are beneficial to the attorney, it is incumbent upon the latter to show that the provisions are fair and reasonable, and were fully known and understood by the client. (*Boyd* v. *Daily,* 85 App. Div. 581; affirmed, 176 N. Y. 613; *Whitehead* v. *Kennedy,* 69 N. Y. 462, 466.) "

Upon this record, we hold that: (1) the respondent has failed to establish that the executed retainer was fair and reasonable or that it was signed by the petitioner with full comprehension of its meaning; (2) the contract was abandoned and disregarded. It follows that no enforcible contract for legal services exists in this case and that the services of the respondent must be computed on a *quantum meruit* basis.

We find that the reasonable value of all legal services rendered by the respondent to the estate and to the petitioner, individually and as executrix, is $12,500, exclusive of disbursements. Accordingly, the total fees of the respondent are fixed in that sum. Reimbursement is directed of the difference between $12,500 and disbursements and the total amount heretofore received by the respondent.

The order of the Surrogate should therefore be reversed, on the law and on the facts, and the application made by the petitioner to fix counsel fees is granted to the extent herein indicated, with costs.

BOTEIN, P. J., VALENTE, McNALLY and BERGAN, JJ., concur.

Order unanimously reversed, on the law and on the facts, and the application made by the petitioner to fix counsel fees is granted to the extent indicated in opinion by M. M. FRANK, J., with costs. Settle order on notice.