648 F.Supp. 1004 (1986)
Debra A. CORRADO, As Limited Administratrix of the Goods, Chattels and Credits of Anthony C. Corrado, Deceased, Plaintiff,
v.
CONSOLIDATED RAIL CORP. and Alpha Portland Industries, Inc., Defendant.
Civ. A. No. 85-5.
Special Court, Regional Rail Reorganization Act.
December 9, 1986.
*1005 Joseph D. Hill, Kingston, for plaintiff, Debra Corrado.
Ralph G. Wellington, Bonnie M. Kistler, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Bruce B. Wilson, Donald A. Brinkworth, Philadelphia, Pa., of counsel), for defendant, Consolidated Rail Corp.
Before WISDOM, Presiding Judge, and THOMSEN and GASCH, Judges.
WISDOM, Presiding Judge:
Debra Corrado, the plaintiff, seeks a declaratory judgment that the conveyance of rail properties from Penn Central to Conrail in 1976 included the side track agreement relating to the spur track on which her husband was killed. Conrail contends that Penn Central, or its predecessor, abandoned the agreement in favor of her husband's employer, Alpha Portland Industries. Conrail argues, therefore, that because the side track agreement was not "in effect" at the time of conveyance nor "used or useful in the provision of rail *1006 services", it was not included in the conveyance of rail properties to Conrail. We find that the agreement had been abandoned before the conveyance and grant Conrail's motion for summary judgment.

I.
On January 28, 1910, the New York Central & Hudson River Railroad entered into a side track agreement with the Catskill Cement Company. The side track agreement provided for the construction of a spur line between the railroad's main line and Catskill's cement plant in Greene County, New York. The agreement further provided that the railroad would furnish and own the track metal and would have exclusive use of the spur and that Catskill would provide the land and labor necessary to construct and maintain the spur. The spur was constructed.
The defendants in this action are the successors-in-interest to the original parties to the side track agreement. Alpha Portland Industries acquired the Catskill Cement Company. The Penn Central Transportation Company assumed the operations of the New York Central Railroad. On March 30, 1976, the trustees of Penn Central conveyed certain rail properties to Conrail in compliance with this Court's conveyance order of March 25, 1976. Schedule E of the Bill of Sale included all contracts
to which Grantors or their predecessors in interest are or were parties and which is in effect on the date of delivery hereof and which is used or useful in the provision of rail services to be assumed by Grantee in connection with the properties conveyed to Grantee by this Bill of Sale.
Bernard Van Tassel is the trainmaster for the area in which the spur track is located. In 1966, he became a trainmaster for the New York Central Railroad. He stayed on as trainmaster with Penn Central when it assumed rail operations in the area and is now employed by Conrail. He testified by deposition that since 1966 neither Conrail or its predecessors ever operated on the spur track. Instead, the railroads delivered cars destined for Alpha Portland's cement plant to an interchange track paralleling the main line. From there the cement plant used its own engine and crew to pick up the cars and bring them over the spur track into the plant. The same engine and crew returned empty cars and cars filled with cement products to the interchange track to be picked up by the railroads. His testimony is uncontroverted.
On December 13, 1978, Mrs. Corrado's husband, while engaged as a railroad brakeman for Alpha Portland, was killed by a derailed coal car on the spur track. Corrado brought a wrongful death suit in the United States District Court for the Northern District of New York against Alpha Portland, Penn Central, Conrail and others.[1] She alleged that Penn Central and Conrail succeeded to the rights and obligations of the side track agreement and, therefore, are responsible for the condition of the spur track. Conrail denied the allegation, contending that the agreement had been abandoned before the 1976 conveyance. The district court declined to resolve this dispute because it involved a question within the exclusive jurisdiction of this Court.[2] Mrs. Corrado now seeks our resolution of the dispute.

II.
The essential issue we must decide is whether the side track agreement was abandoned before 1976. If it were abandoned, *1007 the agreement would not have transferred to Conrail because it would not have been "in effect on the date of delivery" and "used or useful in the provision of rail services." On the other hand, if it were not abandoned, the agreement would have transferred.[3] Because the agreement was entered into in New York and concerns property in New York, that state's law governs.
The abandonment of a contract requires the mutual assent of the parties.[4] This assent need not be expressed; it "may be inferred from the attendant circumstances and conduct of the parties."[5] The conduct must be unequivocal and sufficiently inconsistent with the objectives of the contract, however, to indicate an intent to abandon the contract.[6]
The cases concerning abandonment of railroad easements provide similar guidelines. An easement is abandoned by non-use accompanied by an intent to abandon permanently.[7] The intent to abandon may be inferred from the unequivocal conduct of the owner of the easement.[8] Under these guidelines, we find clear evidence of abandonment.
It is uncontroverted that no railroad has used the spur track since at least 1966. By the time of the transfer of Penn Central's assets in 1976, the spur track had not been used by either Penn Central or the New York Central Railroad for at least ten years. Nor has Conrail ever used the spur track.
At some time before 1966, Alpha Portland took over rail operations on the spur line. It hired its own engine and crew to pick up and return cars from the railroad's interchange track.[9] The New York Central, Penn Central, and Conrail clearly acquiesced in this arrangement. This is not a situation of mere non-use, in which the spur track lay idle for a period of time. Instead, the railroads forfeited their exclusive right to operate on the spur track, under the agreement, to Alpha Portland. The permanent change in the method of providing rail services to the cement plant unequivocally evidences the parties' intent to abandon the provisions of the side track agreement.[10]
The plaintiff points to three instances in which Conrail or Penn Central "admitted" *1008 the existence of the agreement as evidence of an intent not to abandon the agreement. Two instances concern allegations made in cross-claims against Alpha Portland in other litigation. In 1976, Penn Central asserted a cross-claim against Alpha Portland for indemnification in a personal injury suit against Penn Central involving an accident on the spur track at issue here. The cross-claim was based on the indemnification provisions of the side track agreement. That action was eventually settled upon Alpha Portland's payment of $8,000 to the plaintiff. In the New York District Court action underlying this case, Conrail asserted a cross-claim against Alpha, also on the basis of the side track agreement. This cross-claim was later withdrawn. Corrado contends that these cross-claims constitute judicial admissions of the continued existence of the side track agreement. We do not agree.
At most, the cross-claims could constitute ordinary admissions. Although statements in pleadings in other actions are usually admissible as admissions by the party who made them, they are not binding or conclusive.[11] This is especially true when, as in this case, the pleadings were superseded or withdrawn.[12] Conrail is not bound by the allegations made in the cross-claims.
Moreover, we find that the cross-claims do not constitute even ordinary admissions. A party asserting a crossclaim assumes liability as a necessary predicate for establishing his indemnification claim. Alternative and inconsistent pleadings such as cross-claims do not constitute admissions.[13] Penn Central and Conrail's "admissions" of the agreement in their cross-claims were merely alternative pleadings made in the course of defending themselves in those suits. Accordingly, we find that the "admissions" carry no evidentiary weight.
The third instance of an alleged admission occurred in June of 1976 when the Assistant Secretary of Conrail certified that a copy of the original side track agreement is included in the records that Conrail acquired from Penn Central. We do not consider this circumstance to be an admission of anything other than that a copy of the document exists in Conrail's files. It certainly is not evidence of Conrail's intent not to abandon the agreement.

III.
Corrado seeks a declaratory judgment that Conrail acquired the side track agreement from Penn Central. Conrail has proved to this Court's satisfaction that the agreement was abandoned before 1976. Because it had been abandoned, the agreement was excluded from the conveyance of rail properties to Conrail from Penn Central in 1976.
Conrail's motion for summary judgment is GRANTED. Corrado's complaint seeking declaratory relief is DISMISSED with prejudice.
NOTES
[1] Corrado v. Bethlehem Steel Corp., No. 80-CV-951 (N.D.N.Y. filed Nov. 26, 1980).
[2] The Regional Rail Reorganization Act of 1973, § 209(e)(2) 45 U.S.C. § 719(e)(2) provides:

The original and exclusive jurisdiction of the special court shall include any action, whether filed by any interested person or initiated by the special court itself, to interpret, alter, amend, modify, or implement any of the orders entered by such court pursuant to section 303(b) [45 U.S.C. § 743(b)] of this Act [title] in order to effect the purposes of this chapter or the goals of the final system plan.
This section gives this Court exclusive jurisdiction to determine what properties are included in conveyances ordered by this Court. See Consolidated Rail Corp. v. Penn Central Corp., 533 F.Supp. 1351, 1353-55 (Sp.Ct.R.R.R.A.1982).
[3] ConRail argues that even if the agreement were in effect in 1976, the agreement is not "used or useful in the provision of rail services" by ConRail because neither ConRail or Penn Central ever used the spur track. We do not see the applicability of this alternative argument. The purpose of the "used or useful" language is to distinguish rail properties from non-rail properties. See Penn Central Corp. v. United States Railroad Ass'n, 475 F.Supp. 165, 168 (Sp.Ct.R.R. R.A.1979). Assuming the agreement was in effect, the exclusive right to use the spur track, provided by the agreement, is certainly "useful to the provision of rail services". The sole question, therefore, is whether the agreement was in effect.
[4] Armour and Co. v. Celic, 294 F.2d 432, 435 (2d Cir.1961) (applying New York law).
[5] Estate of Rothko, 84 Misc.2d 830, 379 N.Y.S.2d 923, 953 (Surr.Ct.1975), modified on other grounds, 56 A.D.2d 499, 392 N.Y.S.2d 870 (1977); see also Armour and Co. v. Celic, 294 F.2d 432, 435 (2d Cir.1961); In re Estate of Schanzer, 7 A.D.2d 275, 278, 182 N.Y.S.2d 475, 479 (1959) aff'd 8 N.Y.2d 972, 204 N.Y.S.2d 349, 169 N.E.2d 11 (1960); Restatement (Second) of Contracts § 283 comment a (1981).
[6] Armour and Co. v. Celic, 294 F.2d 432, 436 (2d Cir.1961).
[7] Consolidated Rail Corp. v. MASP Equipment Corp., 67 N.Y.2d 35, 39-40, 499 N.Y.S.2d 647, 649, 490 N.E.2d 514, 516 (1986); Roby v. New York Central & Hudson R.R. Co., 142 N.Y. 176, 181, 36 N.E. 1053, 1055 (1894).
[8] Consolidated Rail Corp. v. MASP Equipment Corp., 67 N.Y.2d 35, 39-40, 499 N.Y.S.2d 647, 649, 490 N.E.2d 514, 516 (1986).
[9] The interchange track was leased to Alpha Portland for storing and exchanging rail cars. This lease further evidences the intent to abandon operations on the spur track in favor of Alpha Portland.
[10] The side track agreement provided:

That the Railroad Company shall have the exclusive right to use said track for any and every railroad purpose required or authorized by Federal or State law; and in and about any and every use the said track and right of way shall be deemed property of the Railroad Company. (Emphasis added.)
[11] Enquip, Inc. v. Smith-McDonald Corp., 655 F.2d 115, 118 (7th Cir.1981); Fidelity & Deposit Co. of Md. v. Hudson United Bank, 493 F.Supp. 434, 443 (D.N.J.1980), rev'd on other grounds, 653 F.2d 766 (3d Cir.1981).
[12] See Fidelity & Deposit Co. of Md. v. Hudson United Bank, 493 F.Supp. 434, 443 (D.N.J.1980), rev'd on other grounds, 653 F.2d 766 (3d Cir. 1981).
[13] Douglas Equipment, Inc. v. Mack Trucks, Inc., 471 F.2d 222, 224 (7th Cir.1972); Continental Ins. Co. of N.Y. v. Sherman, 439 F.2d 1294, 1298-99 (5th Cir.1971). The Continental court held that to allow "adverse inferences from [the alternative allegations in a cross-claim] would defeat much of the salutary effect of the flexible joinder provisions of the federal rules [of civil procedure]." 439 F.2d at 1298-99.