A mariner at sea may orally make an effectual will of his personal estate, and, in addition to the general rules regarding testamentary capacity and freedom from restraint, the only essentials are that the act shall be performed with testamentary intent, and shall be sufficiently intelligible to permit a finding of its scope, and that its execution shall be proved by at least two witnesses.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 347, 349, 351; Dec. Dig. §§ 136, 139.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 140*)—ESTABLISHMENT—NUNCUPATIVE WILLS.

A mariner upon the high seas, who was a resident of New York, within two days of the port of destination, had a. chronic malady, and its fatal tendencies had been stated to him by his physician. While suffering from a particular seizure, which was a development of his established ailment, and confined to his room, he stated that "he was afraid that this was going to be a very hard spell with him, he was afraid that something would happen to him," and said that, if anything happened to him, everything he had was to go to his daughter Lizzie. Both the master and first officer witnessed the statements. *Held* sufficient to establish his nuncupative will, though he subsequently recovered sufficiently to return to duty on board ship, but died a few days later, after having landed, while proceeding to his home.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 352; Dec. Dig. § 140.*]

3. WILLS (§ 140*)—ESTABLISHMENT—NUNCUPATIVE WILLS—EVIDENCE—SICKNESS.

While sickness is not necessary to the validity of a nuncupative will, evidence that the person was sick is admissible as tending to show that his act, which might not have had testamentary meaning if done in health, assumed the significance of a. will when done by one confronted by death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 352; Dec. Dig. § 140.*]

4. WILLS (§ 274*)—ESTABLISHMENT—SUFFICIENCY OF PETITION—NUNCUPATIVE WILLS.

A petition for probate of a nuncupative will need not allege the words and phrases intended to be proved as the will; Code Civ. Proc. § 2614, merely requiring that the petition shall describe the will.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 274.*]

Proceedings for probate of the will of George O'Connor. Will admitted to probate.

Thomas Costigan and Denis A. Spellissy, for proponent.
Charles H. Kelby, for public administrator.
M. V. Dorney, special guardian.

KETCHAM, S. The proponent alleges that the decedent made an oral or nuncupative will which should be admitted to probate. There is no case in the history of this court in which a like will has been propounded, and modern instances of nuncupation are rare. Still the rules are plain. The common law permitted nuncupative dispositions, and its principles are still alive, save so far as they are affected by statutory provisions, as follows:

(a) "No nuncupative or unwritten will, bequeathing personal estate, shall be valid, unless made by a soldier while in actual military service or by a mariner, while at sea." Decedent's Estate Law (Consol. Laws, c. 13) § 16.

(b) "Before a nuncupative will is admitted to probate, its execution and the tenor thereof must be proved by at least two witnesses.". Code Civ. Proc. § 2618.

The cases on the subject are: Hubbard v. Hubbard, 8 N. Y. 196; Prince v. Hazleton, 20 Johns. 502, 11 Am. Dec. 307; Matter of Thompson, 4 Bradf. Sur. 154; Matter of Gwin, 1 Tuck. 44. And the antiquarian will find the development of the law touching nuncupa-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tive wills in the following books: Jessup's Surr. Pr. (3d Ed.) § 305;
1 Jarman, Wills, *79; 30 Am. & Eng. Ency. of Law, 560 et seq.; Page,
Wills, § 232; Chapl. Wills, 429; Rood, Wills, § 228.

From these authorities it may be derived that a mariner at sea may
orally make an effectual disposition of his personal estate which shall
have full testamentary effect, and that, in addition to the general rules
regarding testamentary capacity and freedom from restraint, the only
essentials are that the act shall be performed with testamentary in-
tent and shall be sufficiently explicit and intelligible to permit a finding
of its purport and scope, and that its execution must be proved by at
least two witnesses.

Though at common law the requirement was finally developed, even
before the statute of frauds (St. 29 Car. II, c. 3), that the nuncupative
transaction, to be effectual, should ordinarily be made in the last sick-
ness and in prospect of death, there is no trace that this requirement
even applied to soldiers in actual service or sailors at sea, and certainly
there is none to show that it now applies to them. Before the enact-
ment of 29 Car. II, soldiers and mariners were regarded as a favored
or privileged class of testators; and there was no suggestion that their
right to make an oral testament when, in one case, upon actual military
service or, in the other case, at sea, was dependent upon illness or fear
of death therefrom. Indeed, it is quite obvious that the fear of death
which was supplied by sickness in the case of those who made oral
wills at home was sufficiently furnished, in the case of sailors or sol-
diers, by the perils of the sea or the presence of the enemy.

The act referred to placed restrictions upon nuncupation but only
upon the express provision that:

"Any soldier being in actual military service, or any mariner or seaman,
being at sea, may dispose of his movables, wages and personal property as he
or they might have done before the making of this act."

This was the state of the English law at the time of the colonization
of New York, and there has been no statutory exception engrafted
thereon. The English statute referred to was almost literally repro-
duced in the earlier statute in this state regarding wills. It seems clear,
therefore, that the oral will of the soldier or sailor may be valid, wheth-
er or not the same was made in the last sickness. While there is no ex-
press authority to this effect in this state, the rule is clearly stated by
Mr. Surrogate Bradford, though obiter, in the Thompson Case, supra,
in the words following:

"As well because the wills of soldiers and mariners were excepted from
the operation of the provisions of the statute of frauds, as for the reason and
ground of the exception, and the peculiar character of the military testa-
ment, it was never held requisite that these nuncupations should be made
during the last sickness."

In submitting to this view it may well be remarked that its danger-
ous effect is that a mariner's oral will, once made at sea, may remain
for his lifetime, and may be proved by the mouth of two witnesses,
however long after the event and however ample the testator's oppor-
tunities for a deliberate statutory will may have been in the meantime.

In the case at bar there is no insincerity, interest, or other feature

attaching to the witnesses to the transaction in question which impairs either their personal worth or the intrinsic credibility of their story. It affirmatively appears that the testator was in the full possession of his faculties and that he was under no restraint. The circumstances of the act alleged as his will were as follows:

The testator was the chief engineer of the steamship Dorothy, then upon the high seas, within two days of the port of her destination. He was a resident of the state of New York. He had a chronic malady, and its nature and fatal tendencies had been stated to him by his physician. At the time in question he was suffering from a particular seizure, which was an event and development of his established ailment. He was confined to his room, though he afterwards recovered sufficiently to return to duty on board ship, and a few days later, having landed, he died on the cars while proceeding to his home.

The witnesses by which it is sought to prove the execution and tenor of the will are the master and the first officer of the ship. The former testifies that in the presence of the first officer and himself the deceased said that "he was afraid that this was going to be a very bad spell for him; he was afraid that something would happen to him." The witness' further statement is:

"We asked him if there was anything we could do in case he did not get over it. He said, 'No; except that everything I have belongs to my daughter.' Q. Did he mention her name? A. Yes; 'my daughter Lizzie.'"

On later examination the captain says of the words of the deceased on the same occasion:

"I think he said, 'Everything I have is going to my daughter,' or 'I want my daughter to get everything I have.'"

The first officer, now the master of the steamship Wilhelmina, testifies that, on the occasion described by the first witness, the captain and he were both present when the testator said:

"That if anything happened to him everything was to go to his daughter Liz."

In a different version of the same conversation he again says of the deceased:

"He told us that, if anything happened to him, all he has goes to his daughter Liz. He told me and Capt. McDonald that, if anything happened to him, everything was to go to his daughter."

The proponent was the stepdaughter of the deceased, and was undoubtedly nominated by the use of the words "Liz," "Lizzie," and "my daughter." The deceased left no widow or ascertainable next of kin, and the controversy in this proceeding is between the stepdaughter and the state of New York. The decedent left no real estate.

The only apparent question is whether or not the deceased, when he employed the words described by the witnesses, made his declaration with testamentary purpose and deliberation. "It should be borne in mind that as well the testator as all of the witnesses were seamen, and were undoubtedly acquainted with the rights of mariners in regard to making their wills." Hubbard v. Hubbard, 8 N. Y. 196, 202.

The finding must, therefore, be either that he thought he was making

a vain and useless utterance or that he invested his act with all the solemnity and purpose of a will. Sickness may not be necessary to the validity of the transaction; but it affords ground for believing that the act, which might not have had testamentary meaning if done in health, assumed the gravity and significance of a will when done by one who confronted death. There is satisfactory evidence that, on the 4th day of January, 1909, this testator, while a mariner at sea, made his nuncupative last will and testament by which he bequeathed to Elizabeth Hughes all the personal estate of which he might die possessed.

The motion made in behalf of the state that the petition be dismissed, on the ground that it does not allege the words and phrases intended to be proved as the will of the decedent, is denied. The only requirement of the Code is that a petition for probate shall describe the will propounded (Code Civ. Proc. § 2614), and this is sufficiently done in this proceeding. The dictum in Redfield's Law and Practice, § 242, that the petition should set forth "the particular words or language which it is proposed to establish as a will," is not supported by any authority cited by counsel or discovered by the court; and it cannot be taken to impose upon the requirement of Code, § 2614, any more than its ordinary meaning.

The will is regarded as established, and may be admitted to probate upon findings setting forth the tenor thereof.

Decreed accordingly.