In the Matter of Proving the Nuncupative Last Will and Testament of GEORGE STEIN, Deceased.

Surrogate's Court, Bronx County, June, 1922.

**Wills — soldier killed in action in France — testamentary declarations made while embarking from Hoboken being a valid nuncupative will in New Jersey may be admitted to probate in this state as a will of personal property — letters written in France cannot be given effect as a nuncupative will — Surrogate's Court Act, § 141 — Decedent Estate Law, § 23.**

Proof that while decedent, a resident of this state and a soldier, was embarking with his regiment at Hoboken, N. J., in June, 1917, for service overseas, he said: " If anything should happen to me on the other side, I want Carl to have everything," warrants the conclusion that the statement was the declaration of a testamentary intent made *animo testandi*, and being a valid nuncupative will under the laws of New Jersey, it may be admitted to probate in the state of New York as a will of personal property.

Letters written to said " Carl " by decedent while he was in France with the American expeditionary forces during 1917 and until he was killed in action on May 28, 1918, although clearly showing that it was his intent that if he were killed while in the service the said " Carl," the petitioner herein, who had befriended him, should receive all of his property and the death benefit due under his war risk insurance, cannot be given effect as a nuncupative will as there was a non-compliance with the requirement of section 141 of the Surrogate's Court Act.

There being no mention of France in section 23 of the Decedent Estate Law as it stood at the time of decedent's death the said letters cannot be admitted to probate as a will of personal property.

PROCEEDING to probate a will.

*Ernest E. L. Hammer (John J. Prendergast, of counsel), for proponent.

*Edward R. Koch,* special guardian for unknown parties.

*Cortland A. Johnson,* deputy attorney-general.

SCHULZ, S. The petitioner prays for the probate of a nuncupative will, alleged to consist of statements made to comrades and others and of letters written to the petitioner by the alleged testator, a soldier, while in actual military service. The petitioner was a friend of the decedent, his senior in age, with whom he had made his home, and between whom and the decedent there existed such a strong bond of affection and esteem that the conclusion might be warranted that the petitioner stood in *loco parentis* to him. The decedent died in action on May 28, 1918, in France.

The various statements and letters may be grouped into three subdivisions:

(a) A letter written by the decedent to the petitioner and another person on March 17, 1916, and a statement made to a comrade in the same year in the state of Texas;

(b) A statement made at Hoboken, N. J., while the decedent was embarking with his regiment for service overseas in June, 1917;

(c) Letters written to the petitioner while the decedent was in France with the American expeditionary forces during the years 1917 and 1918.

I am satisfied that at all the times stated the decedent was of sound mind, memory and understanding, not under any undue influence, restraint or duress and of full age and that he wished that the petitioner, who had befriended him, should receive all of his property upon his death. The only question to be determined is whether the evidence submitted is sufficient to establish a nuncupative will so that his testamentary intent may be given effect.

I shall discuss the three groups, " a," " b " and " c " in their inverse chronological order, because if any one of such writings or declarations constitutes a valid nuncupative will of the whole of decedent's property, it will be unnecessary to consider those which precede it.

The Surrogate's Court Act (§ 141), in so far as material, provides that " Before a nuncupative will is admitted to probate, its execution and the tenor thereof must be proved by at least two witnesses." Assuming that the testimony of all of the witnesses is true, this statutory requirement has in my opinion not been complied with as to the letters to which reference is made in subdivision " c." Nor may these letters be admitted as a will of personal property executed in a foreign country according to its laws, for the reason that France was not mentioned in the statute (Decedent Estate Law, § 23; Laws of 1909, chap. 18; Consol. Laws, chap. 13), as it was at the time of the decedent's death, and prior to the amendment made thereto by section 2, chapter 294 of the Laws of 1919. It then provided, so far as material, as follows: " * * * A will of personal property executed without the state, and within the United States, the Dominion of Canada, or the Kingdom of Great Britain and Ireland, as prescribed by the laws of the state or country where it is or was executed, * * * may be admitted to probate in this state."

*Matter of Cruger*, 36 Misc. Rep. 477, cited by the petitioner, does not apply. There the testator was a resident of France and the learned surrogate distinctly states: " It is quite clear that the propounded paper does not in any way conform to the require-

ments of the law of this State as to its method of execution, and it can be sustained, if at all, only as a French will, executed in France by a resident of that country." In the pending matter the petitioner states that the decedent was a resident of this state.

I hold, therefore, that no nuncupative or other will was established by the letters referred to in subdivision " c."

Evidence was introduced by the petitioner as to the laws of the state of New Jersey affecting nuncupative wills. This was not controverted or questioned by the respondents, and under such laws the statement made by the decedent in the city of Hoboken in the state of New Jersey, referred to in subdivision " b," constitutes a valid nuncupative will in that state and hence may be admitted to probate in this state as a will of personal property pursuant to the statute last cited. Such statement was as follows: " If anything should happen to me on the other side, I want Carl to have everything," the person designated as " Carl " being Charles Monroe Senseman, the petitioner herein.

The fact that the decedent is presumed to have known the law, and was about to embark upon a journey to a foreign land to take part in a war with all its incident dangers to his life, as well as the form of the statement itself, warrants, if it does not compel, the conclusion that the statement thus made was the declaration of a testamentary intent made *animo testandi*. *Matter of O'Connor*, 65 Misc. Rep. 403, and cases cited.

While the testimony concerning such statement was at first somewhat indefinite and contradictory as to dates and other occurrences, it was subsequently and to a large extent cleared up, and, I believe, as regards the material fact that the statement was made, is true. Although the letters of the decedent cannot be given effect as a nuncupative will, they clearly show that it was the intent of the decedent that if he was killed while in the service, this petitioner should receive his property and the death benefit due under his war risk insurance.

This will, having been made after the occurrences referred to in subdivision " a " at the Mexican border, and disposing of all of the personal property of the decedent, makes the consideration of the letter from El Paso, and the statement made at or about that time, unnecessary.

A decree of probate may enter in accordance with the foregoing conclusion.

Decreed accordingly.