Essex County Orphans Court—In re Straulina.

ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of MARTIN STRAULINA, deceased.

[Decided June 22d, 1926.]

**Wills—Probate—Soldiers Will, in Form of a Letter Addressed to His Mother, Without Attestation of Witnesses—Will was Written While Testator was in Camp During World War—He Afterward was Killed in Battle in France, Proof of Which is Made by Reference to Army Records—One Statute Provides for Wills of Those "in Actual Military Service"—Cases Examined and it Appears That Persons in Camp Awaiting Call to Actual Service are Within the Definition, Notwithstanding the Observation of Godolphin That "Those Who Lie in Some Castle, Garrison or Other Like Place or Defense" are Not Included—Law of Soldiers' Wills Reviewed at Length.**

On application for probate.

*Mr. Charles Jones,* for the proponent.

CAFFREY, J.

This is an application for the probate of a paper-writing, in the form of a letter, which, including the signature, is in the handwriting of the decedent as his last will and testament. The paper is unwitnessed, but any doubts as to its being testamentary in character are resolved by the use therein of the phrase: "This letter to be considered as my last will and testament." The letter is dated March 28th, 1918.

Martin Straulina, the decedent, was unmarried and over twenty-one years of age, and resided, in his lifetime, in the borough of Verona, Essex county, New Jersey. He entered the services of the United States government as a soldier in September, 1917, and, after being in various camps, was, in March, 1918, transferred to Camp Merritt, and a short time later was sent abroad. Just before he sailed he mailed the

letter in question to his mother, wherein he stated that he had taken out a war risk insurance and directed how the same should be distributed in case of his death.   Decedent left no other property.

On October 9th, 1918, he went into action and was killed, and the paper-writing is offered for probate as a soldier's will.

First, as to the proof of his death, there was offered in evidence a copy of the records of the United States war department, in which it is recited that decedent during the war, while serving as a corporal, received a severe gun shot wound on side in action on October 9th, 1918, and was left on the field as the company advanced, which certificate further identifies his grave and is under the hand of John W. Weeks, secretary of war, and the seal of the war department is affixed thereto.   This is plenary proof of his death.

Section 18 of the Wills act (*4 Comp. Stat. p 5865 § 18*) provides as follows: "That not withstanding this act, any soldier being in actual military service, or any mariner or seaman being at sea, may dispose of his movables, wages and personal estate as he might have done before the making of this act."   Our statute providing for the manner in which will shall be executed, as well as this section of our Wills act, are copies of the act of *29 Car. II ch. 3.*

The first question to be considered is, Was the decedent "in actual military service" at the time he wrote this letter?

Godolphin, who wrote in 1701, in discussing the privileges of soldiers in executing their wills before the statute (*29 Car. II ch. 3*), says: "Only let it not here escape our observation that these privileges apply only to such soldiers as are in expedition or actual service of war, and not so much as lie safely and securely in some castle, garrison or other like place or defense."

The leading case of *Gattward* v. *Knee,* decided in 1902, and reported in *4 Brit. Rul. Cas.* (at *p. 895*), is very much in point.   In considering this case, it must be kept in mind that the English statute is identical with ours.   In that case it appeared that on September 7th, 1899, the soldier was

warned for service and embarked September 19th, 1899. He wrote the letter sought to be admitted to probate as his last will and testament on September 8th, 1899, and, it will be noted, before embarkment. He died of fever during the siege of Ladysmith, February 9th, 1900, and it was held that he was, at the time he wrote the letter, "in actual military service"·within the language of the statute. In the matter of the estate of George Bignier, recently disposed of by Surrogate O'Brien, of the county of New York, in an unreported opinion, a very similar situation was presented. In that case the letter was written by the decedent to his sister while in a training camp at South Carolina and shortly before he was sent overseas. It was held that the letter was written while he was "in actual military service," and the letter was admitted to probate as his last will and testament. In his opinion the surrogate used the following language: "It would be a great injustice to patriots whose service was confined to camps in this country, many of whom made the supreme sacrifice, to hold that they were not 'in actual military service,' as it would be also to those who executed wills while in camps here and later gave up their lives on foreign soil."

From the foregoing it would appear that there can be no question but that the document offered was executed while the decedent was "in actual military service."

It will be recalled that our act provides that a soldier in actual military service may "dispose of his personal estate as he might have done before the making of this act." The question then arises, What might have been done before the making of this act? In other words, what was the requirement for the execution of wills prior to the statute of *29 Car. II ch. 3,* which has been seen is the origin of our act.

Swinburn, in his *Treatise on Wills*—at *p. 334 (5th ed., 1727)*, in which he reviews the practice prior to the enactment of the statute of *29 Car. II ch. 3,* uses the following language: "Concerning the last question, viz., whether it be necessary that there be witnesses to a written will. This is the answer. That if it be *certain and undoubted* that the testatment is written or subscribed with the testator's own

hand; in this case the testimony of witnesses is not necessary. But if it be *doubtful* whether the testament were written or subscribed by the testator; in this case the testimony of witnesses is necessary to confirm the same to be the testator's own hand."

Godolphin (at *p. 66* ¶ *2*) uses the following language: "A testament written by the testator's own hand proves itself, without the help of such witnesses, yea, though it hath not his name subscribed to it, nor his seal affixed to it, nor witnesses present to it; provided, it be undoubtedly known to be his writing, or can be sufficiently proved to be."

*1 Jarm. Wills (6th ed.) 102,* says: "Under the old law, prior to passing of the Wills act, a will was sufficient to pass personal estate, even though not signed or sealed, and no authentication was required in case of personal estate. *1 Bl. (Cooley's ed., 4th ed.) \*502,* says: "As to written wills, they need not any witnesses of their publication. I speak here of devises of lands, which are quite of a different nature, being conveyances by statute unknown to feudal or common law, and not under the same jurisdiction as a personal testament. But a testament of chattels written in the testator's own hand, although it has neither his name or seal to it nor witnesses present at its publication is good, provided sufficient proof can be had that it is in his handwriting."

So far as a somewhat exhaustive research has revealed, this question has never been considered by the courts of this state. The leading case in this country, however, appears to be the case of *Hubbard* v. *Hubbard, 8 N. Y. 196,* where it was held that "as to wills of soldiers in actual service, and mariners at sea, they are left entirely untrammeled by our statutes, and are governed by the principles of the common law. The exception in our statute in favor of soldiers and mariners was taken from *29 Car. II ch. 3,* and is precisely the same language. * * * The courts have given a very liberal construction to this exception in behalf of mariners, &c." And (at *p. 201*) the opinion continues: "Before the statute, the ecclesiastical courts, to whose jurisdiction the establishment of personal testaments belong, require no ceremony in the

publication thereof, or the subscription of any witnesses to attest the same. *1 Rob. Wills 147.* A will of personal estate, if written in the testator's own hand, although it has neither his name or seal to it, nor witnesses present in its publication, was held effectual, provided the handwriting could be proved." *1 Rob. Wills 148.*

From the foregoing it follows that the letter in question was executed as a valid soldier's will, and, there being ample proof that it is in the handwriting of decedent, it should be admitted to probate as his last will.