In the Matter of Proving the Last Will and Testament of GEORGE SIDNEY MALLERY, Late of the Town of Tioga, Tioga County, New York, Deceased.

Surrogate's Court, Tioga County, August 5, 1926.

Wills — proceeding for probate of oral will of soldier — evidence shows decedent declared to fellow-soldiers that he wanted his mother and father to get everything he had in event anything happened to him — letters written by decedent admissible in evidence — decedent was in actual military service within meaning of Decedent Estate Law, § 16, when he made declarations — decedent complied with Decedent Estate Law, § 21 — testamentary declarations admitted to probate.

In a proceeding for the probate of an oral will of a soldier, who died while in actual military service with the A. E. F. in France, evidence showing that decedent at divers times between October 15, 1917, and January 26, 1918, declared to fellow-soldiers at Camp Dix, N. J., that in the event anything happened to him he wanted his mother and father, and no one else, to get everything he had, warrants a decree admitting said declarations to probate, particularly where during the aforesaid time decedent was of sound mind, memory and understanding, and under no restraint or duress.

Letters written by the decedent subsequent to the oral statements are admissible in evidence, as corroborating his proved intent.

Decedent was in actual military service within the meaning of section 16 of the Decedent Estate Law, when he made said declarations, and was entitled to make a nuncupative will, since at the time the declarations were made decedent knew he was about to go overseas to a foreign land to play a part in the world war.

Moreover, there was sufficient compliance with section 21 of the Decedent Estate Law, since it appears that his statement and testamentary purpose were made in substantially identical terms upon two occasions, each time to a single witness, who testified upon the proceeding herein.

PROCEEDING to probate the oral will of George Sidney Mallery, a soldier, who died on the 14th day of October, 1918, while in active military service in France.

*R. M. Paige* [*Addison J. Robison* of counsel], for the proponent.

*Frederick E. Hawkes*, special guardian [*Joseph Beeman* of counsel], for Margaret Louise Mallery.

*Frederick E. Hawkes* and *Joseph Beeman*, for Lucie Mallery.

TURK, S. The petition for the probate of said oral will was made by George Henry Mallery, the father of George Sidney Mallery, and alleges that on or about the 15th day of October, 1917, at Camp Dix, N. J., said George Sidney Mallery while a soldier in the active military service of the United States did declare to Andrew Taylor of Waverly, Tioga county, N. Y., and Llewellyn Lowe of the town of Tioga, Tioga county, N. Y.: " If I should not come back I want my father and mother, and no one else but them, no matter what happens, to get all I have coming from the government, and I want to tell this to enough of you boys from around home so some of you will go back to tell what I want, in case I don't." Also that on or about the first of January thereafter at Camp Dix, N. J., said George Sidney Mallery made the same or similar declaration to Frank Everett and Floyd Rider, and also on the 26th day of January, 1918, at Camp Dix, N. J., he made the same or similar declaration to Floyd Rider and Andrew Taylor. It is also alleged in the petition that while in active service in France the said George Sidney Mallery wrote letters to various people containing statements to the same effect as the oral declaration claimed to have been made by him.

The petition further alleges that George Henry Mallery, his father, Lucie Sabin Mallery, widow, and Margaret Louise Mallery, daughter, are the only heirs at law and next of kin of the decedent, but it further alleges that Lucie Sabin Mallery is not the lawful widow of said decedent and is such nominally only because of a voidable marriage contracted by her with the deceased; that Margaret Louise Mallery, an infant of the age of seven years, is not the daughter of decedent, but is the illegitimate child of Lucie Sabin Mallery.

The petition prays that the declarations of said deceased be proved as the nuncupative will of the deceased and that letters of administration with the will annexed be granted to the petitioner, George Henry Mallery, father of the deceased.

On the return of the citation Frederick E. Hawkes of Waverly, N. Y., was appointed special guardian for Margaret Louise Mallery, and the said special guardian filed an answer on behalf of the said infant, also a request for the oral examination of the witnesses to the alleged will. The said special guardian has also filed objections to the probate of the will on behalf of said infant; and

Surrogate's Court, Tioga County, August, 1926.        [Vol. 127

objections to the probate of the will have been filed by Lucie Sabin Mallery.

After careful consideration of the great mass of testimony which was taken, I am convinced that George Sidney Mallery was legally married to Lucie A. Sabin on the 16th day of July, 1917, at Towanda, Penn.; and that the infant, Margaret Louise Mallery, born on the 21st day of February, 1918, is the legitimate child of George Sidney Mallery and Lucie Sabin Mallery.

Although George Sidney Mallery lived with his wife for a period of two or three weeks at Sayre, Penn., he returned to his home in the town of Tioga, Tioga county, N. Y., prior to his entry in the service and was at the time of his entry in the service of the United States and at the time of his death a legal resident of the town of Tioga, Tioga county, N. Y.

The question now to be determined is, did the decedent make a valid will?

The evidence shows that between the 15th and 20th of October, 1917, while the decedent was at Camp Dix, N. J., in the military service of the United States, he said to Floyd Rider that he had made out his insurance, $5,000 to his father and $5,000 to his mother and *in case anything happened to him he wanted them to get everything he had.* On the 20th day of January, 1918, the day the decedent left Camp Dix for France, he told Andrew Taylor that if he did not come back the insurance would leave his father and mother pretty well fixed; that whatever he had coming he wanted to go to them; that he wanted his wife to have none of it, nothing that was his. He also stated to Llewellyn Lowe, at Camp Dix, about the 7th or 8th of November, 1917, that he had made out his insurance to his father and mother and wanted them to have it all, if anything happened to him. In a letter written to his mother on December 16, 1917, the decedent states that the insurance will help his father and mother should hard luck fall his lot. On June 2, 1918, the decedent wrote to his sister and brother from France, that if anything should happen before the war was over and his wife got the insurance, which he signed in favor of his father and mother, they were to gain evidence and stop it. And in this letter he states that his wife Lucie must receive nothing after he is gone.

I am convinced that at all the times stated the decedent was of sound mind, memory and understanding and not under restraint or duress; that he was of full age and that he wished his father and mother to have all of his property upon his death. The only question to be determined is whether the evidence submitted is sufficient to establish an oral will.

The statutory provisions as to a nuncupative or unwritten will are found in section 16 of the Decedent Estate Law, which provides that a nuncupative will shall not be valid " unless made by a soldier while in actual military service, or by a mariner, while at sea " and in section 141 of the Surrogate's Court Act (as amd. by Laws of 1925, chap. 575), which provides that " before a nuncupative will is admitted to probate its execution and the tenor thereof must be proved by at least two witnesses."

The letters written by the decedent subsequent to the oral statements were not duly executed in accordance with the provisions in reference to execution, and cannot be admitted to probate as his will, but they may be received, however, as corroborating the proved intent of the soldier. *(Matter of Stein,* 119 Misc. 9.)

The common-law restriction that a nuncupative will must be made *in extremis* is still recognized, but *in extremis* does not always mean *in articulo mortis.* (Jessup-Redf. Surr. [1925 ed.] § 275.)

Formerly it was required that an oral will to be made effective must be made in the last sickness and in prospect of death. There is no trace that this requirement ever applied, however, to soldiers in actual service or sailors at sea, and there is no authority tending to show it now applies to them. It is obvious that any soldier in actual service or a sailor at sea contemplates that death is imminent and it is not necessary that they be actually engaged in battle or mortally wounded before they can make an oral disposition of their property. Where a soldier has departed or is about to depart to that which he thinks is death, that is the time and the state of mind, as shown by *Matter of Stein,* when he may make his oral will.

I conclude, therefore, that George Sidney Mallery, while he was at Camp Dix, N. J., was a person entitled to the privilege of making a nuncupative will, because at common law and at the present time soldiers and sailors are a distinctly favored class. George Sidney Mallery knew that he was about to embark on a journey to a foreign land to take part in a war and when he stated to Floyd Rider that in case anything happened to him he wanted them (his father and mother) to get everything he had, the conclusion must be that he knew he was making a vain and useless utterance or that he invested his act with all the solemnity and purpose of a will. *(Matter of O'Connor,* 65 Misc. 403.)

The execution of a written will is required by the statute (Decedent Estate Law, § 21) to be observed with certain prescribed formality, but even that formal requirement permits the testator to acknowledge his signature and to declare it as his last will and testament to the witnesses upon separate occasions. There seems to be no stronger restrictions in regard to the execution of a soldier's

nuncupative will. The statement of testamentary purpose made in substantially identical terms upon two occasions each time to a single witness is sufficient compliance with this statute. (*Matter of Mason,* 121 Misc. 142; *Matter of Hickey,* 113 id. 261.) Substantially the same statement made to Floyd Rider was repeated to Llewellyn Lowe and Andrew Taylor. Their testimony varies somewhat as to the language used, but from their testimony there can be no doubt that George Sidney Mallery intended that his father and mother should have all the property he had at the time of his death. These witnesses gave their testimony in a sincere, impressive and convincing manner. Their statements lead ·to the conclusion that the declarations made by the decedent were of a testamentary intent, the execution of the will is deemed sufficient and the testamentary declarations above referred to are admitted to probate as the last will and testament of George Sidney Mallery.

A decree admitting the will to probate may be settled and entered accordingly.