In the Matter of the Estate of JEROME F. DUMONT, Deceased.

Surrogate's Court, New York County, December 8, 1938.

*Oscar Geltman,* for the petitioner.

*Americus Delli Paoli,* special guardian.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer* and *Francis J. Cronin, Assistant Attorneys-General,* of counsel], for the State of New York.

FOLEY, S.   This is an application to probate a nuncupative will of a deceased soldier pursuant to the provisions of section 16 of the Decedent Estate Law.   That section reads: " No nuncupative or unwritten will, bequeathing personal estate, shall be valid, unless made by a soldier while in actual military service, or by a mariner, while at sea."   The particular questions presented here are: (1) Whether a soldier in service who had returned from France to this country shortly after the Armistice in the World war could make a valid nuncupative will?   (2) Whether at the time of making the will, late in November, 1918, he was in " actual military service " within the terms of that section?

The decedent enlisted in the National Guard of the State of California, an organization then in the Federal service.   He left the United States for service overseas on June 28, 1918.   During that summer he was slightly wounded in action and confined to a hospital in France.   He returned to the United States on November 14, 1918, and was stationed at Ellis Island in the harbor of New York until sometime in December, 1918.   While in France he formed a friendship with a brother of Helen Powers, the petitioner and claimant as sole legatee in this proceeding.   Through the friendship he met Miss Powers and became engaged to marry her.   He attended a dinner party around Thanksgiving time in 1918 at her home, given to announce their engagement.   At that dinner, in the presence of the family and guests, it is claimed that he made an oral will by solemnly stating that if anything happened to him he wanted everything he owned to go to his *fiancée,* Helen.   In December, 1918, he was transferred from Ellis Island to the General Hospital at Whipple Barracks, Ariz.   He was honorably discharged from service on December 22, 1919, on a surgeon's certificate of disability due to pulmonary tuberculosis.   He died in California on January 20, 1920.

The testimony indicates that so far as he knew the deceased had no living relatives and his acts subsequent to the execution of the alleged will clearly indicate a desire on his part to give his property, consisting solely of his war risk insurance, to the petitioner.   Two days before his death he executed a certificate chang-

ing the beneficiary of his insurance from his estate to the petitioner. The Federal authorities, however, refused payment on the ground that she did not come within the permitted class of beneficiaries defined in the War Risk Insurance Act. The present proceeding was plainly brought to obtain the insurance proceeds under a testamentary disposition of his estate.

Section 16 of the Decedent Estate Law was adopted almost verbatim from the English statute (29 Charles II, chap. 3, § 23 [1676].) Its origin and purpose have received consideration in numerous cases in this State. (*Hubbard* v. *Hubbard*, 8 N. Y. 196; *Matter of Thompson*, 4 Bradf. 154; *Matter of Zaiac*, 162 Misc. 642; modfd., 255 App. Div. 709, 718; *Matter of Miller*, 134 Misc. 671; *Matter of Mallery*, 127 id. 784; affd., 220 App. Div. 794; affd., 247 N. Y. 580; *Matter of O'Connor*, 65 Misc. 403.) Under the provisions of the section, the privilege of making a nuncupative will is not extended to every soldier in service. The privilege is granted only to soldiers in " actual military service." That phrase has been interpreted as equivalent to " on an expedition." (*Matter of Thompson, supra; Matter of Zaiac, supra; Matter of Mallery, supra; Drummond* v. *Parish*, 3 Curt. 522; *Matter of Grey*, L. R. [1922], P. 140; *Matter of Limond*, L. R. [1915], 2 Ch. 240; 1 Jarman on Wills [7th ed.], p. 93.) It is stated in the English case of *Drummond* v. *Parish* (*supra*, at p. 529): " These words must have some meaning, it cannot be, that they would be added to the word ' soldier ' unless it were intended to impose some limitation as to the particular class of soldier to whom they were intended to apply; if it were intended to comprise in the exceptive clause all classes and grades of persons in the service, there could be no necessity for the insertion of the words ' actual military service.' "

Was the deceased soldier, whose estate is involved here, after his return from the field of battle still in " actual military service " and privileged to make a nuncupative will? None of the prior decisions in this State appears to have dealt with such a situation. In the case of *Drummond* v. *Parish* (*supra*) the English court denied probate to the unwitnessed holographic will of Major-General Drummond although executed while he was serving in England as Director-General of the Royal army and was liable to be sent abroad upon foreign service. The court found that he was not " on an expedition " and, therefore, not in " actual military service " within the meaning of the statute.

A situation similar to that presented here was passed upon in the Probate Division of the High Court of Justice in *Matter of Grey* (L. R. [1922], P. 140). In that case the nuncupative will was written out by an officer who had served in the Royal Flying Corps in

the World war. It was made on May 9, 1921, the day he entered a military hospital in London to undergo an operation rendered necessary by treatment he had received in a prison camp in Germany. At the time of the making of the will he was an officer of the Grenadier Guards. He died in the hospital on May 15, 1921. There, as in the pending case, the argument was advanced that every soldier in service in May, 1921, was on an expedition, since the British Order in Council declaring the date of the termination of the World war had not as yet been made. It is argued here that the American official termination of the World war was not promulgated until many months after the Armistice. In the *Grey* case evidence was submitted that on May 9, 1921, the date of the will, the decedent's battalion might at any time be sent on active service in Ireland or the Rhine. Here, it is argued that the soldier was still subject to orders to join the Army of Occupation on the Rhine or the American Expedition to Siberia, where military activities continued for several months after the Armistice. The answer to that contention is that the decedent was not under specific orders to take part in either of those expeditions. He was in the same situation as very many other officers and soldiers of the American army, who, although in military service, were awaiting demobilization. The statute extends a special privilege and it may not be extended beyond its true meaning as interpreted by the decisions.

In denying probate in the *Grey* case the English court said: " But giving the most liberal interpretation, I fail to see how it can be said that Major Grey was on an expedition in May, 1921. He was neither in the field, nor proceeding to or from the field, nor in any place for the purpose of proceeding to or from the field. I can see no material distinction between his situation and that of Major-General Drummond in *Drummond* v. *Parish*. It was argued that every soldier was on an expedition in May, 1921, because at that date the Order in Council had not yet been made declaring the date which was to be treated as the date of the termination of the present war under the Termination of the Present War (Definition) Act, 1918. That matter seems to me to be irrelevant: (1) for a soldier to be in actual military service it is not sufficient that there should be a state of war; he must be in some place for the purposes of the war; and (2) ' actual military service ' refers to a state of fact, not to a date artificially fixed by Act of Parliament or Order in Council."

The surrogate accepts as true the testimony of the witnesses with respect to the testamentary statements of the decedent at the dinner party at Thanksgiving time in 1918. The surrogate is

also satisfied that these declarations of intent and tenor were proven by two witnesses as required by section 141 of the Surrogate's Court Act. I am, however, in full accord with the reasoning in *Matter of Grey* (*supra*) and, therefore, hold that the decedent at the time of such declarations was not in "actual military service" within the meaning of section 16 of the Decedent Estate Law. The alleged will is denied probate.

Submit decree on notice accordingly.