In the Matter of the Probate of the Will of WALTER ZAIAC, Deceased.

JULIA TAYLOR, Individually and as Executrix of WALTER ZAIAC, Deceased, Appellant; SYLVESTER GRUSKA, Consul General of Republic of Poland, as Attorney in Fact for Next of Kin of WALTER ZAIAC, Deceased, et al., Respondents.

546

Argued January 4, 1939; decided January 17, 1939.

*Fred L. Gross, Pierre J. Sherry* and *Frank Composto* for appellant. No particular words or form are required with respect to a nuncupative will made by a soldier in military service. (*Matter of Kennedy,* 167 N. Y. 163; *Matter of Wallace,* 148 Misc. Rep. 867; *Matter of Thompson,* 4 Bradf. 154; *Hubbard* v. *Hubbard,* 12 Barb. 148; 8 N. Y. 196; *Matter of Mason,* 121 Misc. Rep. 142.) If the Surrogate's decree of probate was irregular in form, such irregularity could have been easily corrected by the Appellate Division and did not justify denying probate as a matter of law. (*Matter of Tangerman,* 226 App. Div. 162; *Matter of O'Connor,* 65 Misc. Rep. 403; *Matter of Mallery,* 247 N. Y. 580; *Matter of Stein,* 119 Misc. Rep. 9; *Matter of Miller,* 134 Misc. Rep. 671; *Matter of Hickey,* 113 Misc. Rep. 261; *Botsford* v. *Kracke,* 1 Abb. Pr. [N. S.] 112; *Matter of Kennedy,* 167 N. Y. 163; *Matter of Thompson,* 4 Bradf. 154; *Matter of Bassett,* 84 Misc. Rep. 656; *Matter of Katz,* 277 N. Y. 470; *Post* v. *Moore,* 181 N. Y. 15.) Aside from the contents of the letter, there was ample evidence of the declarations of the decedent to constitute legal proof of a nuncupative will, and the determination of the case by the Appellate Division, as a matter of law, is clearly erroneous. (*Hadcox* v. *Cody,* 213 N. Y. 570.) Whether the decree of the Surrogate is regarded as based upon the findings contained in his opinion or as having the effect of a general verdict of a jury, the reversal, upon the law, was wholly unjustified. (*Matter of Eno,* 196 App. Div. 131; *Matter of Booth,* 224 App. Div. 616; *Matter of Findlay,* 253 N. Y. 1; *Gang* v. *Gang,* 253 N. Y. 356; *Saltzsieder* v. *Saltzsieder,* 219 N. Y. 523; *Matter of Berry* v. *Brearton,* 263 N. Y. 274; *Grulich* v. *Paine,* 231 N. Y. 311; *Lenox* v. *Lenox,* 195 N. Y. 359; *Kerner* v. *Epstein,* 269 N. Y. 443; *Perkins* v.

*Guaranty Trust Co.*, 274 N. Y. 250; *Hendrickson* v. *Hodkin*, 276 N. Y. 252; *Horton* v. *N. Y. C. R. R. Co.*, 237 N. Y. 38; *Dulberg* v. *Equitable L. A. S.*, 277 N. Y. 17; *Matter of Mallery*, 127 Misc. Rep. 784.)

*Charles H. Kelby, Joseph G. Blum, Jacob Jolles* and *Joseph H. Stein* for Sylvester Gruska, as attorney in fact, respondent. The unattested holographic letter written by decedent is invalid as a will. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Hills*, 264 N. Y. 349; *Matter of Booth*, 127 N. Y. 109; *Matter of Turell*, 166 N. Y. 330; *Matter of Whitney*, 153 N. Y. 259; *Matter of Hering* v. *Clement*, 196 N. Y. 218; *Anderson* v. *Mather*, 44 N. Y. 249; *Moritz* v. *United Brethrens Church*, 269 N. Y. 125; *Mertz* v. *Mertz*, 271 N. Y. 466; *Matter of Mallery*, 247 N. Y. 580; *Matter of Stein*, 119 Misc. Rep. 9; *Matter of Miller*, 134 Misc. Rep. 671.) The evidence was wholly insufficient to support a finding of testamentary intent or the making of any will. (*Hubbard* v. *Hubbard*, 12 Barb. 148; 8 N. Y. 196; *Matter of May*, 241 N. Y. 1; *Matter of Satar*, 275 Penn. St. 420; *Matter of Thompson*, 4 Bradf. 154; *Prince* v. *Hazelton*, 20 Johns. 501; *Matter of O'Connor*, 65 Misc. Rep. 403; *Matter of Smith*, 6 Phila. [Pa.] 104; *Pierce* v. *Pierce*, 46 Ind. 86; *Matter of McGarry*, 242 Mich. 287; *Drummond* v. *Parish*, 3 Curt. 522; *Matter of Limond*, L. R. [1915] 2 Ch. 240; *Matter of Case*, 214 N. Y. 199; *Matter of Mucklow*, 242 App. Div. 111; 266 N. Y. 513; *Dreyer* v. *Reisman*, 202 N. Y. 476.)

*Oswald M. Murphy*, special guardian for Franciszek Zajac et al., respondents. The reversal by the Appellate Division of the Surrogate which admitted to probate the unattested letter of September 20, 1917, written by the decedent to appellant, was proper. (*Matter of Turell*, 166 N. Y. 330; *Matter of Dodge*, 129 Misc. Rep. 323; 220 App. Div. 794; *Matter of Mallery*, 247 N. Y. 580.) The declarations of the decedent were wholly insufficient as

a matter of law to sustain a finding of testamentary intent and disposition. (*Matter of Satar*, 275 Penn. St. 420; *Matter of Smith*, 6 Phila. 104; *Matter of McGarry*, 242 Mich. 287.)

HUBBS, J.   Decedent, born in Poland, enlisted in the United States army on June 1, 1917. He was sent to various military camps and was stationed at Camp Mills, Long Island, from September 10, 1917, to the time he went to France on October 29, 1917. While at that camp he took out a war risk insurance policy for $5,000, naming his sister, Julia Taylor, as the beneficiary, and the brother, Hipolite, as the alternate beneficiary. While in the Lorraine sector he took out another policy for $5,000, naming the sister, Julia Taylor, as beneficiary. He was discharged from the army for disability on November 26, 1918, and on February 13, 1919, he was confined in the Kings Park State Hospital, and was adjudged incompetent in September, 1919. He died in 1934.

During the fifteen years of his incapacity the government paid certain sums to him, under his insurance policies, which sums have accumulated and now form the whole of his estate. The principal of the insurance policies is not here involved. The proceeds of the policies go to the sister as the named beneficiary. But the amounts paid monthly to the incompetent became his property, and that is the property here involved. There is no dispute as to the insurance policies. The only dispute is as to the rest of the estate of the decedent.

The appellant attempted to probate a nuncupative will of the decedent, the proof of which was in the form of a letter written from camp to the sister, and the testimony of two men who talked with the deceased while he was in camp. The Surrogate (1) admitted to probate the letter written by the deceased; (2) revoked letters of administration and granted letters testamentary;

(3) directed payment of $500 to a special guardian; (4) directed payment of stenographer's fees. The Appellate Division denied probate of the letter as the will of the deceased, as a matter of law, and refused to allow the probate of the nuncupative will testified to by the two witnesses on the ground that there was no evidence as a matter of law to support a finding that there had been an oral will legally made. The provisions for the payment of fees to the special guardian and the stenographers were affirmed.

The letter allowed probate by the Surrogate follows:

" With the Colors
September 20, 1917.

" Dear Sister:

" I inform you that I am still where I have been, that I am in good health and am wishing that the Almighty God keep you the same.

I want to know whether brother Hipolita has already left for the Camp, let me know about it if he has not left as yet.

Now, loving sister, I want you to know that I had myself insured today for $5,000 (five thousand dollars) and it was drawn in your name and in the name of Brother Hipolita, but you are first and the brother is second. I know when I am not alive, you will get the money, but do no injustice to the brother, you would have to pay to brother Hipolita, thousand dollars, if he is alive, and if he is not alive, then everything is yours.

This is my Will in which I bequeath to you all.

" Your ever well-wishing brother,
" WLADYSLAW ZAIAC."

There are three questions involved: (1) May an unattested writing (a letter) of a soldier in active service be probated as a nuncupative will? (2) If not, is there any evidence to sustain the findings of the Surrogate that a nuncupative will was legally made? (3) If there is,

may the Court of Appeals direct the probate of that will in the circumstances here presented?

The learned Surrogate is persuasive in his reasoning that a letter should be admitted as a nuncupative will. Certainly the written word of the deceased is as good evidence of the will of the deceased as is the recollection of two witnesses, after twenty years, of what the deceased said. But the law appears to bar the probate of such a letter as a will. Section 141 of the Surrogate's Court Act provides: " Before a written will is admitted to probate, two, at least, of the subscribing witnesses must be produced and examined, if so many are within the state, and competent and able to testify * * * Before a nuncupative will is admitted to probate, its execution and the tenor thereof must be proved by at least two witnesses. The proofs must be reduced to writing." Section 21 of the Decedent Estate Law (Cons. Laws, ch. 13) provides for the manner of the execution of written wills, and section 16 of the Decedent Estate Law reads: " Unwritten wills of personal property, when allowed. No nuncupative or unwritten will, bequeathing personal estate, shall be valid, unless made by a soldier while in actual military service, or by a mariner, while at sea."

In the face of these provisions it is difficult to see how an unattested letter can be probated as a will even when written by a soldier. The law seems to be that if the will of a soldier is written it must be subscribed by two witnesses. Here there was no proof of the execution and the tenor of the letter by two witnesses. The testimony by the two witnesses was of an oral will. Such being the case, the law has not been complied with when an unattested letter is the only evidence of the will. *Matter of Stein* (119 Misc. Rep. 9) and *Matter of Miller* (134 Misc. Rep. 671) so held. The Surrogate so decided in *Matter of Mallery*, and that case was affirmed

by the Appellate Division and the Court of Appeals (247 N. Y. 580). The Surrogate there wrote an opinion and specifically stated that the letters were not executed in the manner prescribed for a written will and could not be probated. The first point argued on appeal to the Court of Appeals was that the Surrogate erred in not admitting the letters to probate. The case stands as a direct holding that the unattested letters could not be probated. Both by reason and authority the Appellate Division was correct in denying probate to the letter.

But the Surrogate, in his signed opinion, found that the oral will was validly executed. The opinion of the Appellate Division states that there was no evidence as a matter of law to support such a finding of fact. Evidently what the Appellate Division had in mind was that the testimony of the two witnesses as to what the deceased said was that the deceased was talking only about the insurance policies when he said he wanted his sister to have his property, and that the deceased had no testamentary intention. The Appellate Division could readily have found that he had no testamentary intention and that he was merely concerned with the insurance policies, but it cannot be said that the testimony is not subject to the interpretation given the evidence by the Surrogate. Possibly the deceased had in mind only the insurance policies at the time because that is all his estate was composed of. But the Surrogate found that he was thinking primarily of his estate and only incidentally that his estate consisted merely of the policies. Such an inference is permissible, and thus there is evidence to support a finding of fact that the deceased executed a nuncupative will. After the witnesses testified that " He said he had to sign property to the sister " and that if anything happened to the deceased the sister " gets his property," the testimony brought out on cross-examination indicated that what he had in mind was his

insurance policies. But that was because at that time that was all that his estate was composed of. Furthermore, it does not require a stretching of the expressed intention too far to hold that even if he did not mean his estate as such, he at least meant the proceeds of the policies. The estate here consists merely of the proceeds of the policies, but such proceeds are no longer payable as insurance but have become part of the estate. In any event, the Surrogate had the right to interpret the intention of the deceased as being testamentary. Two inferences were possible where the Appellate Division has decided that only one was possible, and it was in error in holding there was no evidence to sustain the Surrogate's findings.

The question of procedure becomes important. It is urged by the appellant that the Surrogate made a finding of fact that a valid oral will had been executed and that this finding was affirmed by the Appellate Division by its failure to reverse the finding of fact and by its holding that there was no evidence as a matter of law to sustain the finding. If that is so, then upon a determination that there was evidence as a matter of law to sustain the finding, the holding of this court would amount to a direction to the Surrogate to grant probate to the oral will.

Undoubtedly the mind of the Surrogate was made up that a valid oral or nuncupative will had been executed, and I think the statements in his opinion constitute findings of fact that the oral will was validly executed. He said: " It follows that not only is a will by nuncupation permissible, but the alternate common-law privilege of a disposition by unattested holographic instrument must be sustained. * * * It is obvious, therefore, that, even were the holograph to be disregarded, probate of the nuncupative will must be allowed " (162 Misc. Rep. 642, 652, 656). Further, " The court is satisfied that the holograph is the more reliable and accurate reflection of the

wishes of this soldier. * * * The holographic instrument hereinbefore quoted will accordingly be admitted to probate, and letters will issue to Julia Taylor as the executrix thereof, according to the tenor of the will" (p. 656).

It is also urged that the Surrogate did give effect to the oral will and merely admitted the letter to probate as corroborative of the disposition to which the witnesses testified. That, no doubt, could have been done by the Surrogate, but a reading of his opinion fails to support such contention. They are almost identical, but the letter differs from the oral will in that it directs that the brother be given one thousand dollars. This is perhaps no more than a wish of the deceased, since he was directing what was to be done with the money which the sister would get as beneficiary. While he had a right to tell her how he wished her to dispose of the money which she would get in that manner, there was no contract that she would do so. The only dispositary provision was the last sentence in which he said: " This is my Will in which I bequeath to you all." That was substantially what the witnesses testified the deceased said he wanted done.

It is also urged that there was no appeal from a denial of the probate of the oral will. There was no need to appeal when the petitioner was not aggrieved. She would take, under the letter probated, just what she would take under the other will. She could not appeal from a decision in her favor — she was not aggrieved.

It matters not whether the signed opinion of the Surrogate be treated as containing findings of fact (*Matter of Booth*, 224 App. Div. 616) or whether the decision is given the effect of a verdict by a jury (Surr. Ct. Act, § 71). In either event a reversal upon the law constitutes an affirmance of the facts found (Civ. Prac. Act, §§ 602, 620). Under the facts found the learned Surrogate adopted a wrong theory in formulating the decree. The

error in that respect did not justify the Appellate Division in refusing probate as a matter of law. It should either have made new findings of fact or remitted the proceeding to the Surrogate's Court.

The order of the Appellate Division, in so far as it denies probate, should be reversed, and the matter remitted to the Surrogate's Court with instructions to admit the will to probate, with costs in this court and in the Appellate Division, payable out of the estate.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.