Essex County Orphans Court.

IN THE MATTER OF THE ESTATE OF JOHN A. SHERIDAN, DECEASED.

Decided November 24, 1943.

For the proponent, *Anthony A. Cicchino.*

HARTSHORNE, C. P. J. Since the surrogate has adjudged that doubts arise upon the face of the proposed will, the cause was referred to this court. The issue is whether a testamentary letter, written by a soldier, since deceased, under conditions hereafter stated, constitutes what is commonly known as a soldier's will.

On August 12th, 1942, John A. Sheridan, the decedent, was inducted into the Army of the United States under the Selective Service Act, 50 *U. S. C. A. Appendix,* §§ 301, *et seq.* The same day he was released from active duty till August 26th, under orders providing that he proceed on that day to Fort Dix for active duty. On August 20th, while still at his home in Newark, he wrote the letter, testamentary in character, disposing of his personal estate, which is now offered as his will. This letter was entirely informal, simply being signed by him, without witnesses, seal or attestation clause.

Subsequently, he obeyed the above orders, and was thereafter transferred in the military service to the State of Washington, where he was drowned April 4th, 1943.

The decedent's above letter is offered as a will under the provisions of our statute that:

"Disposition of movables, wages and personal estate may be made as heretofore by a soldier while in actual military service or by a mariner or seaman while at sea, and nothing contained in this chapter shall affect such dispositions." (*R. S.* 3:2–7; *N. J. S. A.* 3:2–7. Administration of Estates.)

Thus, personal property may be willed either orally, as a non-cupative will, or in writing, without compliance with

the usual safeguards provided by the law (*R. S.* 3 :2–3, 3 :2–6; *N. J. S. A.* 3 :2–3, 3 :2–6) to protect against fraud and imposition after the lips of the testator are sealed by death, if, "made as heretofore by a soldier while in actual military service or by a mariner or seaman while at sea."

The principles as to the essential characteristics of such a will, made by such an individual under such conditions, have come down to us from early Roman law. As to a written will, with which we now deal, it is settled that nothing further is required than the establishment of the testamentary intention and the handwriting of the testator. No witnesses, attestation or seal is requisite. *Re Straulina,* 4 *N. J. Mis. R.* 599; 134 *Atl. Rep.* 88. The authorities are so far clear and uniform.

But as to the requisite character of the soldier's military service, such clarity and uniformity are lacking in several respects, largely due to the variant states of fact presented to the courts, both as to the actions of the proposed testator himself and the conditions of warfare surrounding him at the time he executed the instrument. For instance, in the time of Julius Caesar, when the doctrine of "soldier's wills" arose, Rome was the ruler of the then civilized world, her armies being actively engaged in conquests on various fronts, as unhappily known to so many school boys. With practically all her military engaged in offensives against the enemy, every soldier, *per se,* was freed from the formal restrictions, existing even then, in the making of a will. But by the time of the accession of the Emperor Justinian, these conquests by Rome had largely ceased, and her military were generally stationed in fixed camps at home or in her conquered colonies. Hence, most of her soldiers were well able to execute a formal will. Since the need had thus largely ceased for this soldier's exception to the general rule as to wills, the exception itself was restricted, *pari passu,* to cover only those, as the Code of Justinian stated, who were *"in expeditionibus,"* *i. e.,* on a warlike expedition against the enemy, and not in camp in friendly territory.

Thereafter, the rule as to soldiers' wills, as so restricted, was adopted bodily not only by the ecclesiastical and probate

courts of England, but by the courts of Germany, Russia, and other continental countries. *Re Smith,* 6 *Phila.* 104.

In short, the law is settled that every soldier cannot make a "soldier's will." And this follows in New Jersey because of the rule adopted "heretofore," and because of the above requirement of our statute, substantially identic with that of our sister states and the English common law, that for a soldier to execute such an informal will be must, in addition, be "in actual military service." In view of the constant use of this language previously at the common law, our legislature, in adopting it, must of course be presumed to have intended it to bear its accepted legal meaning.

But between the time of the Roman conquests and the present, the conditions of warfare, let alone their techniques, have largely changed. To the Roman soldier, defensive warfare was largely unknown; not so to the English and continental soldier. His "actual military service" was quite as much defensive as offensive. Hence, the rule, previously restricted, was in turn broadened, in line with its reason. This reason was, of course, that a soldier could not be expected, amidst the stress attendant upon actual operations against the enemy, either offensive or defensive, to have either the time or the opportunity to obtain the aid of a legal draftsman and witnesses. Thus, we find cases arising in England down through World War II, where soldiers, even while in training camp, and not engaged in offensive operations or under orders therefor, were held empowered to make informal wills, due to the fact that they were under the stress of, not only possible, but actual, bombing and death. *Dalrymple* v. *Campbell,* 120 *L. T. R.* 160; *Re Spark* (1941), 165 *L. T.* (*N. S.*) 234.

For similar reasons the rule was relaxed as to those who were under the stress of orders to proceed shortly on expedition against the enemy, even though they had not yet set forth, and whether in training camp or on their last furlough, this principle having been applied both in this country and in England. *Re Straulina, supra; Thorne's Goods,* 11 *Jur.* 569; *Leathers* v. *Greenacre,* 53 *Me.* 561; *Re Zaiac,* 162 *Misc.* 642; 295 *N. Y. S.* 286; *affirmed,* 255 *App. Div.*

709, 718; 5 *N. Y. S.* (2d) 897; 279 *N. Y.* 545; 18 *N. E. Rep.* (2d) 848; *Re Stein's Will,* 119 *Misc.* 9; 194 *N. Y. S.* 909; *Re Mallery's Will,* 127 *Misc.* 784; 217 *N. Y. S.* 489; affirmed, 247 *N. Y.* 580; 161 *N. E. Rep.* 190; *Hiscock's Goods* [1901], *Prob.* 78; *Gattward* v. *Knee* [1902], *Id.* 99; *Re Booth* [1926], *Id.* 118; *Re Gordon's Goods* [1905], 21 *Times L. R.* 653; *Estate of George Bigner,* (*Surrogate's Court, New York County,* 1924, unreported); *Re Kitchen* [1919], 35 *Times L.* R. 612. Those familiar with the nervous tension and hustle and bustle which arises in camp on receipt of sailing orders, will well understand the practical impossibility of having a will formally drawn and executed under such circumstances.

Indeed, there are certain recent decisions which have gone even further, and upheld informal wills made by a soldier when merely in training camp in America, without proximate orders to sail on the AEF or otherwise, and when far from possible attack, *i. e.,* in the Province of Saskatchewan. *Re McLennan* (1940), 1 *West Weekly Reporter* 465 (*Sask.*); *Re Miller's Will,* 134 *Misc.* 671; 236 *N. Y. S.* 529. But the weight of authority is to the contrary (*Van Deuzer* v. *Gorden,* 39 *Vt.* 111; *Grey's Estate, L. R.* [1922], *Prob.* 140; *Drummond* v. *Parish,* 163 *Eng. Reprint* 812; *Bovles* v. *Jackson,* 164 *Id.* 170; cases cited in above paragraph, *supra*) as is the basis of the many cases holding that a soldier on ordinary furlough, as distinguished from his last leave before sailing on an expedition, is not acting under such warlike stress as to validate an informal will. *Re McGarry's Estate,* 242 *Mich.* 287; 218 *N. W. Rep.* 774; *Re Dumont,* 170 *Misc.* 100; 9 *N. Y. S.* (2d) 606; affirmed, 257 *App. Div.* 952; 13 *N. Y. S.* (2d) 289; 282 *N. Y.* 606; 25 *N. E. Rep.* (2d) 388; *Re Zaiac, supra; Re Smith, supra;* compare *Re Kitchen, supra.*

The reason of the rule as well would indicate that one in training camp, far from the stress of either actual or proximate operations against the enemy, either offensive or defensive, would not fall within its coverage. Particularly would this seem to follow in the United States at the present time, where both the War and Navy Departments have, in every military cantonment, set up legal assistance offices with the

aid of every bar association in the country, at which formal wills, on prepared forms, can be readily executed by both our soldiers and sailors. Under such circumstances, while there is no danger of a soldier being unable to have his will formally executed, there is a substantial danger, if he possesses property, that, after his lips have been sealed by death, some skilled penman may forge a simple, unwitnessed letter, and thus fraudulently despoil his entire estate. To extend the rule to this latter extent would thus seem to be doing the soldier a distinct disservice.

Turning to the facts in hand, we find that the decedent at the time he wrote the above letter was clearly a soldier and subject to military discipline, even though he had never yet donned the uniform. *Franke* v. *Murray,* 248 *Fed. Rep.* 865; *Ex parte Thieret,* 268 *Id.* 472. On the other hand, his proximate orders were to proceed, not on an expedition against the enemy, but to a training camp, where he was not subject to the stress and fear of imminent enemy attack, but where he, and all with him, had every facility for the execution of a formal will. Furthermore, he was still on his initial furlough at home, accessible to ordinary legal advice, and not yet in uniform. Thus, because, while a soldier, he was not "in actual military service," as known to the law the letter, which he then wrote, cannot be admitted to probate.